ALKAN vs. THE NEW HAMPSHIRE INSURANCE COMPANY.

*September 29 — October 18, 1881.*

INSURANCE AGAINST FIRE: FORFEITURE CLAUSES IN POLICY. *(1) Omission of applicant to disclose facts. (2) Condition as to non-occupancy: waiver. (3) Agency for insurer under the statute. (4) Clause limiting risk construed. (5) Condition against assignment of policy. (6) Change of possession.*
EVIDENCE. *(7) Opinions of witness.*
REVERSAL OF JUDGMENT: *(8) For admission of improper evidence.*

1. A fire-insurance policy declared that it should be invalidated by any omission to make known a material fact respecting the condition, situation, value or occupancy of the property. The assured was not asked, by the printed form of application or otherwise, whether there were *incumbrances* on the property. *Held,* that the contract was not invalidated by his mere omission to volunteer a statement of the fact that there was a lien on the property, to a large amount, for taxes; nor by his omission to disclose that he had entered into an oral executory contract to lease the property.

2. By its terms, the policy was to become void if the insured premises should become vacant or unoccupied. The property consisted of distillery buildings and machinery, presumably available for no other use; but the policy prohibited that use during its term (three months), while expressly covering a carpenter's risk. The carpenter work contemplated was finished before the end of the term, and the building then remained unoccupied until destroyed. *Held,* that under the circumstances the insurer will not be heard to allege a forfeiture because the premises were unoccupied.

3. The insured applied to W., an insurance agent, to insure his property. W. placed the risk, not in any company represented by him, but in companies, including the defendant, represented by other agents; and there was no communication on the subject between the insured and such other agents. *Held,* that W. must be regarded as defendant's agent in respect to this insurance, under sec. 1977, R. S.; and his knowledge that the premises were unoccupied at the time of the insurance, binds the defendant, and operates as a *waiver* of the condition as to occupancy.

4. The policy contained this clause: "Carpenter's risk granted during the term of this policy; and it is understood and agreed, and this policy is upon the express condition, that the property shall not be operated as a distillery during the term of this insurance, it being intended by this policy to cover carpenter's risk only." *Held,* that the word "only"

must be construed as excluding merely the other *extraordinary* risk named (viz., running the property as a distillery), and not as excluding the general risk common to all property; and the assured may recover for a loss occurring after the occupation for carpenter work ceased.

5. A condition in a policy purporting to invalidate the contract of insurance for an assignment made after the insurance money *becomes due*, would be void, as inconsistent with the covenant of indemnity, and as contrary to public policy.

6. By its terms, the policy was to become void if any change should take place in the title or possession of the property, by judicial decree, legal process or voluntary conveyance. The assured had entered into an oral executory contract to lease the property; and in the meantime, during the term of insurance, the intended lessee entered into actual possession *under a parol license* from the assured, for the single purpose of making repairs. *Held*, that there was no change of possession within the meaning of said condition.

7. Various questions propounded by the defendant to its witnesses (and ruled out) *held* inadmissible as calling improperly for mere opinions and impressions of the witnesses.

8. The improper admission of evidence for the respondent on a particular issue is no ground of reversal, where, after a finding adverse to him upon such issue, he still appears entitled to recover.

APPEAL from the County Court of *Milwaukee* County.

Action on a policy of insurance issued by the defendant company to one Isadore Alkan, insuring him against loss by fire or damage thereby to his distillery building, office and warehouse, and certain specified machinery therein, from June 26, 1879 (the date of the policy), to September 26, 1879, to the amount in the aggregate of $1,500. The policy contains stipulations to the effect that the same shall be void " by reason of any false representation of, or omission on the part of the assured to make known, any material fact respecting the condition, situation, value or occupancy of the property hereby insured;    .    .    .    or if the interest of the assured in the property, whether as owner, trustee, consignee, factor, lessee, or otherwise, be not truly stated in this policy." The policy contains stipulations that it shall become void, (1) if the insured premises shall become vacant or unoccupied; (2) if the

policy shall be assigned " either before or after loss;" and (3) if " any change takes place in the title or possession, whether by judicial decree, legal process or voluntary conveyance." It also contains the following clauses: " Carpenter's risk granted during the term of this policy; and it is understood and agreed, and this policy of insurance is issued upon the express condition, that the property insured shall not be operated as a distillery during the term of this insurance, it being intended by this policy to cover carpenter's risk only." " The said company agrees to make good to the assured, or his executors, administrators or assigns, all immediate loss and damage by fire to the property above specified, not exceeding the sum insured, nor the interest of the insured, to ·be estimated at its actual cash value, for the term of three months, commencing the risk the 26th day of June, 1879, at noon, and to continue until the 26th day of September, 1879, noon, upon the following terms and conditions."

It is unnecessary to state further the contents of the policy, as the portions above stated present all the questions argued on the hearing of this appeal, or considered by the court. The jury returned a special verdict, in which it was found that the policy was issued as above stated; that the insured property was destroyed by fire September 16, 1879; that due proofs of loss were presented to the company by the insured as required by the policy; that afterwards, on the 13th of February, 1880, Isadore Alkan assigned to the plaintiff all his right, title and interest in the policy, " and all benefits and advantage to be derived therefrom," and no notice of the assignment was given to the company at or before the time it was made; that repairs were made in the distillery under the " carpenter's risk " — the work having been. commenced the last of July, and ended September 10, 1880; and that the premises remained unoccupied about thirty days before the work was commenced, and about six days after it was completed, no notice of which was given to the defendant or its agents. It appeared by the

proofs that when the policy was issued the assured owned the insured premises and property, and had then agreed to lease the same to Hoffman, Zimmerling & Rindskopf; and the jury found that the assured gave H., Z. & R. permission to do carpenter work and make repairs; that they took possession of the premises for the purpose of making repairs only; that the assured did not employ the men to do the work, or pay or agree to pay them; that the repairs were made under the direction of H. and Z. by permission of the assured; and that defendant or its agents were not notified that such permission had been given.

The jury also found that when the policy was issued the property was incumbered by an internal revenue tax amounting to nearly $50,000, assessed thereon by the government of the United States, of which the company had no notice, and that an action to enforce the assessment was then pending on appeal in the supreme court of the United States. The jury further found generally for the plaintiff, and assessed his damages at the sum named in the policy, and interest. Both parties moved for judgment on the special verdict. The motion of the plaintiff prevailed, and judgment in his favor for the damages assessed by the jury, and costs, was duly entered. From that judgment the defendant appealed.

*Geo. B. Goodwin*, for appellant:

1. The stipulation that an assignment of the policy, either before or after a loss, should avoid it, was within the power of the parties to make, and violates no rule of public policy. *Dey v. Ins. Co.*, 23 Barb., 623; *Smith v. Ins. Co.*, 1 Hill, 497; *S. C.*, 3 id., 508; *Pollard v. Ins. Co.*, 42 Me., 227; *Waterhouse v. Ins. Co.*, 8 Rep., 753. 2. By the terms of the policy it was to become void by reason " of any false representation or omission on the part of the assured to make known any material fact respecting the condition, value or occupancy of the property." The knowledge of the true character of the interest of the assured in the property was

material to the insurer. The concealment by the insured of the incumbrances amounted to a misrepresentation, and avoided the policy. *Keeler v. Niagara Ins. Co.*, 16 Wis., 531; *Fuller v. Ins. Co.*, 36 id., 599; *Hinman v. Ins. Co.*, id., 161; *Schumitsch v. Ins. Co.*, 48 id., 26; *Blumer v. Ins. Co.*, 45 id., 622; *Ryan v. Ins. Co.*, 46 id., 671.   3. If the premises were either vacant or unoccupied, the policy became void.   *Wustum v. Ins. Co.*, 15 Wis., 138; *Gans v. Ins. Co.*, 43 id., 108; *Devine v. Ins. Co.*, 32 id., 471; *Wakefield v. Ins. Co.*, 50 id., 533. The appellant had a right, by the terms of the policy, to the care and supervision involved in occupancy. *Keith v. Ins. Co.*, 10 Allen, 228; Wood on Ins., 181; *Ashworth v. Ins. Co.*, 112 Mass., 422; *Cook v. Ins. Co.*, 12 Ins. Law Journal, 887.   4. The policy was "to cover carpenter's risk only." When the carpenters got through work, the risk ceased. *Langworthy v. Ins. Co.*, 11 Reporter, 744.

For the respondent there was a brief by *Cottrill, Cary & Hanson*, and oral argument by *Mr. Cottrill:*

1. After a loss, the claim under the policy was a mere chose in action, and assignable, notwithstanding the clause in the policy. *Dogge v. Ins. Co.*, 49 Wis., 501; Wood on Ins., sec. 94; *Goit v. Ins. Co.*, 25 Barb., 189; *Courtney v. Ins. Co.*, 28 id., 116; *Carroll v. Charter Oak Ins. Co.*, 38 id., 402; *Mellon v. Ins. Co.*, 17 N. Y., 609; *Brichta v. Ins. Co.*, 2 Hall, 372. 2. No inquiries were made concerning incumbrances. Under these circumstances, failure to mention them does not vitiate the policy. *Wright v. Ins. Co.*, 36 Wis., 522; *Knox v. Lycoming Ins. Co.*, 50 id., 671.   3. The premises were insured as unoccupied, with full notice to Weil that they were unoccupied. Weil was the agent of defendant. *Schomer v. Hekla Ins. Co.*, 50 Wis., 575.

LYON, J. It is claimed on several grounds that the defendant company is not liable on the policy in suit, and hence that the judgment ought to be reversed. These grounds, as stated

and argued by the learned counsel for the defendant, are briefly the following: The policy was void in its inception, because the assured failed to disclose to the insurer (1) that the property was incumbered by the government taxes assessed upon it; (2) that he had contracted to lease the property to Hoffman and his associates; and (3) that the property was unoccupied.

If it shall be held that the policy was valid in its inception, then it is claimed that it afterwards became void because, (1) it covers nothing but a "carpenter's risk," and that risk had ceased before the insured property was burned; (2) it was assigned by the assured to the plaintiff, after loss, without the consent or knowledge of the defendant company; and (3) there was a change of possession of the property after the policy was issued. These several propositions, alleged as grounds for reversal, will be considered in their order.

1. Was the policy void in its inception? No application accompanies the policy, and it contains no clause expressly requiring the assured to disclose incumbrances upon the property insured. Undoubtedly the existence of incumbrances is a fact material to the risk. There is a stipulation in the policy that the omission " to make known a material fact respecting the condition, situation, value or occupancy of the property " shall invalidate the policy. This stipulation relates more particularly to the physical *status* of the property, and falls far short of requiring the assured to disclose incumbrances unasked. The assured represented that he was the owner of the property, and on the trial proved the representation true. There is no pretense that he fraudulently suppressed any fact relating to his title. If the defendant company desired more particular and definite information on the subject, it should have called upon the assured for such information. Failing to do so, and there having been no fraudulent concealment by the assured, we find nothing in the policy which destroys the contract merely because the assured did not volunteer the statement that a lien for taxes existed upon the property. The

principle which must control here is thus stated in Wood on Insurance, 388: "When no inquiries are made, the *intention* of the assured becomes material, and to avoid the policy it must be found, not only that the matter was material, *but also that it was intentionally and fraudulently concealed.*" This, doubtless, is a correct statement of the law in cases like this. The above observations apply with equal, perhaps greater, force to the fact that the assured failed also to disclose that he had entered into a verbal executory contract to lease the property to Hoffman and his associates. No discussion of this point is required.

2. The policy contains a printed stipulation or condition that it shall be void if the premises shall become vacant or unoccupied. The premises were unoccupied when the policy issued, and during much of the term for which they were insured, and also at the time they were burned. But, under the circumstances of the case, we do not think the policy was thereby rendered void. The insured property consisted of distillery buildings and machinery. Presumably, the property was available for no other use; yet the policy prohibits that use of the property, and, but for the carpenter's risk, which the defendant granted, would have compelled the assured to let his property stand idle or forfeit his insurance. In other words, it would have compelled him to leave the property practically unoccupied during the life of the policy. With such a provision in the policy, it seems to us that the company cannot be heard to allege a forfeiture of the contract because the premises were unoccupied. There is another aspect of the case which leads to the same conclusion. The assured, by his agent, applied to one Weil, an insurance agent, to insure the distillery property. Weil did not place the risk with any company which he represented, but placed it in companies represented by other agents — the defendant company being one of them. There was no communication on the subject between the plaintiff and the regular agents of the latter company; at

least, none is proved. His negotiations were exclusively with Weil. These facts are undisputed, and they make Weil the agent of the defendant company, in respect to this insurance, by virtue of R. S., 584, sec. 1977; for most assuredly he aided and assisted in transmitting an application for insurance by the plaintiff to that company, and the policy in suit from it to the plaintiff. *Schomer v. Hekla Ins. Co.*, 50 Wis., 575. Weil knew, when the policy was issued, that the premises were unoccupied, and we do not understand that the special verdict negatives such knowledge. His knowledge binds the company, and operates as a waiver of the condition that the policy shall be void if the premises become unoccupied. *Devine v. The Home Ins. Co.*, 32 Wis., 471, and cases cited. Our conclusion upon this branch of the case is, that the policy was not void in its inception.

3. This brings us to determine whether the policy became void, or ceased to be operative, after it issued.

*First.* The proposition that it covered what is termed a "carpenter's risk" only, and hence that it ceased to be operative after the repairs were completed, we think untenable. The particular clause upon which this claim is based, is as follows: "Carpenter's risk granted during the term of this policy; and it is understood and agreed, and this policy of insurance is issued upon the express condition, that the property insured shall not be operated as a distillery during the term of this insurance, it being intended by this policy to cover carpenter's risk only." The argument in support of the interpretation of the policy contended for is based chiefly upon the use of the word "only" in the above clause. A "carpenter's risk" is understood to be the extraordinary risk consequent upon making repairs in the insured building. That such use of the building was regarded by the insurers as increasing the hazard of loss, is obvious from a provision in the policy as follows: "The working of carpenters and other mechanics, in building, altering or repairing the prem-

ises named in this policy, will vitiate the same unless permission for such work be indorsed hereon, and, if required, an extra premium paid, except for dwelling-houses only, where five days are allowed in any one year for incidental repairs, without indorsement." It is also obvious that the insurer regarded the use of the premises for a distillery as increasing the hazard. The clause under consideration mentions both of these hazards, and permits one of them *only* — to wit, the use of the buildings for repairs,— excluding their use for distillery purposes. The clause refers to extraordinary hazards alone, and the word "only" manifestly means that the risk of but one of the hazards specified therein is assumed by the insurer.

This construction leaves the next clause in the policy, which is that the insurer agrees to make good to the assured "*all* immediate loss and damage by fire" to the insured property, of full force and effect as a general insurance against loss by fire for the specified term.

*Second.* Was the policy invalidated by the assignment thereof by the assured to the plaintiff without the consent or knowledge of the defendant company? The contract of the insurer was, that in case the insured property should be destroyed by fire during a specified term — certain conditions in the contract being complied with by the assured,— the insurer would make good the loss to the amount named in the policy. After loss during the term, and compliance with such conditions, the obligation of the insurer to pay the loss became absolute. The demand against the insurer then became a mere chose in action for the sum payable pursuant to the contract. The relation between the assured and insurer thus became that of creditor and debtor, and the policy ceased to be significant except as evidence of the existence and amount of the debt. The assignment of the policy in form was in substance and effect an assignment of the debt which the insurer owed the insured. One of the incidents of ownership of a chose in

action of this kind, arising *ex contractu*, is an absolute right to assign or transfer it. It is an elementary rule of law, that a condition or exception in a gift or grant, inconsistent with or repugnant to the nature of the estate given or granted, is void, and must be rejected. So it has been held that where there is a gift in tail, with condition not to suffer a recovery, the condition is void. So also is a condition that tenant in fee shall not alien. And this because the conditions are inconsistent with the nature and incidents of the estates given or granted. In *Bradley v. Peixoto*, 3 Ves. Jr., 324, the master of the rolls applied the above rule to a gift of bank stock, with condition that it should be forfeited if the donee should dispose of it, and held the condition inconsistent with the gift, and therefore void. No good reason is perceived why the rule is not, on principle, equally applicable to covenants and contracts. If it is, then it seems very clear that a condition in a policy of insurance that an assignment after loss, and especially after the liability of the insurer has become absolute by compliance on the part of the assured with all conditions subsequent, shall forfeit the contract and invalidate the policy, is in like manner void. For certainly such a condition is entirely inconsistent with the contract of indemnity, after the liability of the insurer has become absolute, and only the ordinary relation of debtor and creditor exists between the insurer and assured.

But another view may be taken of the question under consideration, which is not without significance. The law authorizes voluntary assignments by debtors for the benefit of their creditors (R. S., 497, ch. 80), and also proceedings in insolvency which may result in an assignment of the assets of the debtor for the same purpose. R. S., 1026, ch. 179. It is not too much to say that the law favors such assignments and proceedings where the debtors are insolvent, as being the most equitable mode of distributing the proceeds of their estates among creditors. Such an assignment must necessarily in-

clude the whole estate of the debtor liable to seizure upon execution, or it cannot be upheld. Any stipulation in a contract which prevents the debtor from assigning all his assets without its working a forfeiture of the contract, is manifestly against public policy. For example, suppose that, by reason of the burning of his property, or some other cause, the insured became insolvent, and desired to make a voluntary assignment for the benefit of his creditors, under chapter 80, or to prosecute proceedings in insolvency, under chapter 179, with a view to obtaining a discharge from his debts. The law gives him the absolute right to pursue either course, but requires him to transfer to the assignee all his assets, including his debt against the insurance company. No alternative is open to him. He must make the transfer or give up the right which the law gives him. If he makes the assignment, and the condition in the policy prohibiting an assignment thereof after loss, as well as before, is held valid, the result would be that the sum due the assured on the policy would be lost to his creditors. It seems to us that a stipulation in the policy which, if upheld, leads or might lead to such results, and which can be of no benefit whatever to the insurer, ought to be held void.

Thus far we have considered the condition against assignment after loss on principle; but we are not without authority on the subject. Only one case has been cited (and we have not been able to find another) which sustains such a condition in a policy as valid. That is a general-term decision in New York. *Dey v. Ins. Co.*, 23 Barb., 623. The doctrine of that case has since been denied and overruled, and it is now held in that state that such conditions in policies of insurance are void. *Goit v. Ins. Co.*, 25 Barb., 189; *Courtney v. Ins. Co.*, 28 Barb., 116. Such also is the ruling of the supreme court of Pennsylvania in *West Branch Ins. Co. v. Helfenstein*, 40 Pa. St., 289. See also Wood on Ins., 189, § 94. In closing our remarks on this subject, we cannot do better than give an

extract from the opinion by Justice WOODWARD in the case last cited. He says: "The last error assigned was upon the rejection of the assignment of Edward Helfenstein for the benefit of his creditors, made the 8th of February, 1861, more than four years after the loss accrued, and three and more after this suit was brought. The policy, bristling all over with sharp conditions, has one for this occasion, and the company attempt to impale the plaintiff upon it. The condition is, that neither the policy nor any claim thereunder shall be assigned, either prior or subsequent to a loss, except with the consent of the corporation, manifested in writing; and in case of transfer without corporate consent, 'this policy shall thence-forth be void and of no effect; and *any liability of said cor-poration upon such claim shall thenceforth cease.*' However competent it was for the company to make their contract of insurance dependent on such a condition, it was not competent for them to limit the legal effect of a claim thereunder after loss. Helfenstein acquired, by reason of the loss, a legal right to receive so much money at the hands of the company. That chose in action he might assign. If not assigned before suit, the writ was properly issued in his name alone; if assigned after suit, the court will see that the money, when paid by the defendant, goes to the proper party. But the condition appealed to is no defense for the company. If it is applicable to a case circumstanced like this, it is void and null, because opposed to the law of the land." We hold that the assignment of the policy to the plaintiff after the loss does not render the policy void.

*Third.* The remaining objection to the validity of the policy — that there was a change in the possession of the insured property after the policy issued, of which the defendant company had no notice — may readily be disposed of on the facts. Hoffman and his associates did not go into possession under a lease, but were simply there under a parol license from the owner, for the single purpose of making repairs. The owner

had the right of possession and the general possession of the property all of the time, and could have revoked the license any moment. We think there was no change of possession within the meaning of the condition in the policy in that behalf.

Upon the whole case, therefore, we conclude that the policy is valid; that the plaintiff has a right of action upon it for the amount of the insurance; and that judgment was properly rendered in his favor therefor on the special verdict.

4. It only remains to consider the rulings of the court on certain objections to the admission of testimony offered on the trial. All of these rulings, save one, sustained objections to questions propounded on behalf of the defendant to its own witnesses. They were as follows: To the chief engineer of the fire department of Milwaukee — "Did you make any inquiries as to how the fire originated? Did you form an opinion as to how the fire originated — whether it was incendiary or not?" To Weil, who, we hold, was the agent of the defendant for the purposes of this insurance — "Why did you not take these risks in one of your companies? Why did you not put it (the risk) in some other company that you represented at that time? Did you, in fact, disclose to the agents of the defendant, at the time of effecting that insurance, or prior to that time, any reason why the insurance was not a desirable insurance? Were you in possession of facts, at the time of effecting the insurance, which induced you to believe it was not a good risk for any of the companies you represented, and whether you disclosed, or caused to be disclosed, such facts to the defendant or the defendant's agents, at or subsequent to the time of the insurance made by the defendant?" To Fowle, who worked one day on the repairs — "What was your impression, from the material brought there for your use as a carpenter, as to the *bona fides* of any repairing attempted to be done in that distillery? What is your opinion as to whether these repairs were being made in good

Alkan vs. The New Hampshire Ins. Co.

faith, from the character of the material used and the kind of repairs attempted to be made? What is your opinion, whether that was the fire of an incendiary or not? Did you, from any examination you made then, or anything you saw the night of the fire, form an opinion as to whether it was an incendiary fire or not?" This witness, having testified that he accused Hoffman of setting the fire, was further asked — "How did he act when you accused him of burning the distillery?"

These questions (except the last) call for hearsay evidence, for opinions in matters concerning which opinions are not allowable, and for the impressions — even the suspicions — of the witness. The last question is little more than an inquiry into the state of a man's nerves, as indicated by his acts, when accused of a high crime. That the testimony sought to be given by each and all of them was incompetent, is too clear to require discussion. Mr. Cottrill was permitted to testify on behalf of the plaintiff, under objection, to a conversation with the assistant attorney general of the United States, concerning the suit to enforce the lien of the tax before mentioned upon the insured property, in which that officer expressed the opinion that the government had no case, and said he should advise the attorney general to dismiss the appeal. The government had been defeated in the action in the circuit court, and this testimony was given to show that the tax was no substantial lien or incumbrance upon the property. This testimony was also clearly incompetent; but, inasmuch as the jury found that the lien existed, and the case has been determined on that hypothesis, the defendant could not possibly have been injured by the erroneous admission of the testimony. Hence the error will not work a reversal of the judgment.

*By the Court.*— The judgment of the county court is affirmed.