ROLOFF and another, Respondents, vs. FARMERS' HOME MU-
TUAL INSURANCE COMPANY OF THE TOWN OF ELLING-
TON AND ADJOINING Towns, Appellant.

*December 8, 1906—January 8, 1907.*

*Fire insurance: Fraud: Incumbrances: Evidence: Enhancing of risk:*
*Duty of insurer.*

1. In an action to recover for a loss under a policy insuring a
   cheese factory standing on leased ground, under the evidence,
   stated in the opinion, it is *held* that charges of intentional and
   fraudulent withholding of knowledge in relation to the title to
   the property, or of other facts which the insured knew, and
   knew to be material to the risk, were not sustained.
2. When an applicant for insurance has answered truthfully all
   questions submitted to him and has not suppressed any fact
   within his knowledge tending to enhance the risk, he has per-
   formed all that is required of him, and if more information is
   necessary to a full understanding of the risk it is the duty of
   the insurer to seek it, or at least to ask for it.

APPEAL from a judgment of the circuit court for Outa-
gamie county: JOHN GOODLAND, Circuit Judge. *Affirmed.*

Suit for loss under an insurance policy, tried to the court.
It appeared, without dispute, that the principal building de-
stroyed was a cheese factory, built by one Armstrong upon
certain premises leased to him for one dollar as long as he
should maintain a cheese factory thereon, by one Conrad,
and that some three years before the fire Armstrong had
executed a contract, in the ordinary form of a land contract,
providing that, upon completed payment, he would execute
to plaintiff a full and clear title to the building by bill of
sale, and at the same time had manually delivered to plaint-
iff his lease.   Before the insurance was written the entire
amount of this purchase price had been paid, but no bill of
sale had been executed.   The lease contained a prohibition
against subleasing without the consent of Conrad, but it was
testified by *Roloff* and disputed by Conrad that a verbal con-

sent was given at about the time the former purchased this building, after which he had spent large sums in addition and equipment. The application for the insurance stated that the property was not incumbered, and in response to question, "State the value of the whole property, including the land," stated, "Stands on leased ground." It was proved, without dispute, that both the defendant's agent and its president were informed, at the time of writing the insurance, that plaintiff did not own the ground on which the building stood, but that the same had been leased for that purpose by Conrad. Numerous defenses of arson, fraud in proofs, etc., were introduced by the two questions in the application above stated. The court found that there was no fraud therein, but that said answers were true, and accordingly rendered judgment in favor of the plaintiff, together with one *Jacquot,* who held a subsequently executed mortgage upon the building; from which judgment the defendant appeals.

For the appellant there were briefs by *Pierce & Lehr,* and oral argument by *J. E. Lehr.*

For the respondents there was a brief by *A. M. Spencer* and *A. C. Siekman,* and oral argument by *Mr. Spencer.*

DODGE, J. The reckless interposition of defenses involving charges of crime and fraud is not creditable to a corporation organized to supply indemnity to those unfortunate enough to lose their property by fire, where, as seems to be the case here, such charges have no foundation even, apparently, in the imagination of the defendant. The charges of arson in destruction of the property and of perjury in the proofs of loss have not been supported, nor sought to be, by the offer of a word of evidence of any sort. The remaining allegation of intentional and fraudulent withholding of knowledge in relation to the title of the property had apparently slightly more of good faith to excuse it. Plaintiff had stated in his application to the defendant's agent that the property

to be insured was not incumbered; that it stood on leased ground; that it was occupied by the owner; and that the same was a full exposition of all facts in regard to the condition, value, and risk of the property to be insured so far as known to the applicant and material to the risk. This statement was made to an agent who, as plaintiff was perfectly aware, had full knowledge that the ground belonged to one Conrad, that the building had been erected thereon by one Armstrong, under lease from Conrad, and that the same company had carried insurance thereon for Armstrong, and had twice insured the building for plaintiff after its transfer to him from Armstrong. The utmost diligence of counsel has been unable to suggest any untruth in the letter of these affirmative statements. Of course, both parties to the conversation understood that the property referred to was the building, and that was wholly unincumbered, except as any building erected by a lessee may be said to be incumbered by the rights of the landlord. The building was occupied by the owner, namely, the plaintiff, and the defendant's agent well knew that he, and not the owner of the ground, occupied it. It was on leased ground, as the agent had known, for many years, and as he communicated somewhat industriously by letter to the president of the company before the insurance was written. But was there any fraudulent concealment of other facts which the plaintiff knew, and knew to be material to the risk?

Here it is urged that, since the lease to Armstrong contained a prohibition against underleasing the premises without the consent of the owner and a provision that the latter might expel the lessee in such an event, plaintiff's occupancy was momentarily terminable by the landlord, and that this fact was one enhancing the risk. The evidence is well-nigh conclusive that plaintiff had no knowledge of any such situation. When Armstrong sold him the building he had also manually transferred to him the lease, and plaintiff, according to his own testimony, had notified the owner of the land

and obtained his consent to such assignment of right of pos-
session.    In this he is in some measure contradicted by Con-
rad, who, however, upon cross-examination, admitted a part
of the conversation which he had first denied *in toto,* and ad-
mitted further and subsequent dealings with the plaintiff serv-
ing strongly to confirm the probability of latter's statement,
so that we do not hesitate to hold that the evidence preponder-
ates in its favor, although the trial court has not found spe-
cifically on that question.    Obviously the transaction between
Armstrong and *Roloff* evinced a purpose in both to transfer
from one to the other the full term for which the land was
occupied, for the sale of the building was absolute and com-
plete.    Whether such assignment could be effective at law
without writing under the statute of frauds, a most persuasive
case was presented for equity to declare and enforce it, for
plaintiff had at once gone into possession on the faith of
whatever oral agreement was made between him and Arm-
strong, had paid over $700 for the building, and had expended
large sums in the improvement, enlargement, and equipment
thereof.    Certainly a claim by Armstrong to possession of the
land would have been deemed fraudulent as against plaintiff.
We cannot escape the conclusion that plaintiff had, by virtue
of such conduct of Armstrong and the consent by Conrad, be-
come assignee of said lease, and tenant according to its terms,
so that his statement was strictly true, even construed as de-
claring that the ground was leased to him.

The evidence wholly fails to show that any facts were
known to the plaintiff in any wise limiting his absolute title
to this building or affecting the insurance risk thereon, except
the one fact that he did not own the ground on which it stood,
and that he communicated industriously in his application.
If defendant was interested to know the terms of the lease or
tenancy as affecting the value of plaintiff's interest in the
building, the duty was upon it to inquire.    When an appli-
cant for insurance has answered truthfully all the questions

submitted to him and has not suppressed any fact within his knowledge tending to enhance the risk, he has performed all that is required of him. If more information is necessary to a full understanding of that risk, it is the duty of the insurer to seek it, or at least ask for it. *Alkan v. N. H. Ins. Co.* 53 Wis. 136, 141, 10 N. W. 91; *Dunbar v. Phenix Ins. Co.* 72 Wis. 492, 501, 40 N. W. 386.

*By the Court.*—Judgment affirmed.