MAX L. BLOOM COMPANY, Respondent, vs. UNITED STATES CASUALTY COMPANY, Appellant, and AMERICAN NATIONAL BANK and another, Respondents.

*October 16, 1926—January 11, 1927.*

*Insurance: Loss by burglary: Evidence as to felonious entry: Sufficiency: Contention that plaintiff fraudulently created evidence of entry: Degree of proof required: Sufficiency of books and records of loss: Negligence: Trial: Examination of witnesses: Questions calling for conclusion of witness: View of premises: Discretion of court: Forfeiture upon assignment of policy: Assignment of claim after loss.*

1. In an action for burglary insurance, the question whether plaintiff's premises were burglarized on a certain night is for the jury; and the evidence is *held* to show that there were visible marks made by tools with force and violence at the place of entry.   p. 527.
2. An instruction limiting the premises burglarized to three floors of the building in which plaintiff's goods were stored was not prejudicial to defendant, the prejudice, if any, being to the

plaintiff, which was compelled to accept a greater burden under the instruction than it was required to accept under the policy.   p. 529.

3. A view of the premises by the jury is discretionary with the court, whose refusal to grant a view is not error in the absence of a plain abuse of discretion.   pp. 529, 530.

4. Where the evidence showed that conditions as to marks and scratches made by tools at the place of entry had substantially changed between the time of the burglary and the trial, the court was within its discretion in denying a motion of defendant's counsel at the conclusion of the trial for a view of the premises by the jury.   p. 530.

5. Where defendant's counsel contended in his argument that plaintiff's president made visible marks at the place of entry on the premises to fraudulently represent that a burglary had been committed, the court did not commit prejudicial error in instructing the jury that such fraudulent conduct must be established by clear and satisfactory evidence.   p. 532.

6. The question as to the sufficiency of the books and accounts kept by plaintiff to enable defendant to determine accurately the exact amount of loss is for the jury.   Substantial compliance with the provision of the insurance policy as to keeping books and accounts showing the exact loss is sufficient.   p. 532.

7. The insurer, continuing the insurance and granting additional insurance with knowledge of how the insured kept its books, which insurer's accountant had examined without criticism in adjusting a former loss, cannot complain of such system.   p. 533.

8. The evidence in this case is *held* not to show that plaintiff was negligent in preserving records.   p. 533.

9. A question to an expert accountant as to whether he found plaintiff's books so kept as to show the exact loss is improper as calling for a conclusion on an issuable fact for the court or the jury.   p. 534.

10. The question whether the insured's bookkeeping method was a sufficient compliance with the requirements of the burglary policy is for the court, not for the jury.   p. 534.

11. Goods taken from a warehouse by the owner, to which a loan company surrendered a warehouse receipt securing the loan, are not subject to a chattel mortgage which violated the burglary insurance contract, the loan company having parted with its lien.   p. 535.

12. A provision in the policy prohibiting assignment thereof is construed to refer to an assignment before the burglary, and

not to refer to assignments thereafter. A provision prohibiting assignment of a claim after loss would be *held* contrary to public policy and void. [The rule of *Alkan v. New Hampshire Ins. Co.* 53 Wis. 136, adhered to.]   p. 535.

APPEAL from a judgment of the circuit court for Milwaukee county: CHARLES L. AARONS, Circuit Judge. *Affirmed.*

This is an appeal from a judgment in an action for burglary insurance.

The action is based on four policies of $10,000 each against burglary of the goods of the plaintiff corporation, which goods were located in plaintiff's four-story building in the city of Milwaukee.

The defendant denies that there was any burglary of the plaintiff's goods; denies that plaintiff suffered any loss; denies that the plaintiff established its claim by direct or affirmative evidence as required by the policies; denies that the plaintiff established that there were visible marks made by tools at the place of alleged entry of the premises, as required by the terms of the policies; denies that the plaintiff kept books from which the loss could be estimated, as required by the policies; denies that plaintiff was the owner of two of said policies or causes of action thereunder; claims that the premises of the plaintiff had not been kept reasonably secure; claims that the goods had been incumbered by chattel mortgage, contrary to the provisions of the policies; and claims that the damages were excessive.

The case was tried before a jury. The jury found by special verdict that on January 21 or 22, 1925, there was a loss of plaintiff's merchandise by burglary; that entry to the premises was made by actual force and violence which produced visible marks upon the premises at the place of entry by tools; and that the value of the merchandise burglarized was $30,625.25.

The errors assigned on this appeal are as follows: The court erred in refusing to grant defendant's motion for a

directed verdict; in refusing to submit to the jury the question for the special verdict requested by the defendant; in its instructions to the jury; in not reducing the judgment by the value of goods incumbered by chattel mortgage; in not reducing the judgment to the amount of discrepancies discovered in plaintiff's calculations; in not granting defendant's motions after judgment; and in its failure to find two policies void by reason of certain assignments mentioned therein.

For the appellant there was a brief by *Bendinger, Graebner, Hayes & Hofer,* attorneys, and *Lines, Spooner & Quarles,* of counsel, all of Milwaukee, and oral argument by *Gerald P. Hayes* and *Charles B. Quarles.*

For the respondent *Max L. Bloom Company* there was a brief by *Schmitz, Wild & Gross* of Milwaukee, and oral argument by *Edwin J. Gross* and *Robert Wild.*

For the respondent *American National Bank* there was a brief by *Edgar L. Wood,* and oral argument by *John C. Warner,* both of Milwaukee.

The following opinion was filed November 9, 1926:

CROWNHART, J. This case was very fully tried in the court below and was very ably presented in this court by counsel for both sides. It will serve no useful purpose to attempt to detail all the facts in this opinion. We have given the case careful and serious consideration.

Counsel for the appellant have summarized at the close of their brief their objections to the judgment, and we shall take them up in the order there presented.

The appellant contends that there was in fact no burglary of the *Max L. Bloom Company* premises on the night of January 21 or 22, 1925. Under the evidence this was clearly a question for the jury to pass upon. There certainly was abundant evidence before the jury from which it might draw a contrary conclusion.

Appellant contends that, assuming there was a burglary,

the plaintiff failed to establish satisfactorily the making of marks upon the premises at the place of entry by tools, chemicals, electricity, or explosives, as required by the policies of insurance. It appears by the evidence, and it was not disputed on the oral argument, that the original entry was from an outside door to the ground floor of the building, opening into the elevator shaft; that a piece of door jamb some two or three feet long had been broken and pried off with a chisel or some similar instrument, and the sliding door, which had been hooked from the inside by an ordinary hook dropped into a staple, had been opened by bending the hook and forcing it out of the staple, which required some kind of a tool to be used in applying force. It is admitted that it required some kind of tools to pry off and break the piece of the door jamb. It will thus be seen as a matter of law that there were visible marks at the place of entry, made by tools by force and violence.

It is contended that the trial judge erred in instructing the jury in defining what constituted plaintiff's premises. The court said:

"The premises referred to means that portion of the interior of the building occupied solely by the assured (the plaintiff) in conducting its business, that is, the second, third, and fourth floors of the building known as Nos. 165–167 Reed street in the city of Milwaukee, which building is on the northwest corner of Reed and Oregon streets."

We may concede that the court was in error in limiting the premises to the three floors of the building in which the plaintiff had its goods stored, and yet the error would not be prejudicial to the defendant. On the contrary, it would be prejudicial, if at all, to the plaintiff. As a matter of law, the court should have determined that the place of entry was the outside door to the elevator, and that the evidence established the fact without dispute that there were visible marks made by tools in forcing the entry at that point. The

effect of the instruction of the court was to require the
plaintiff to go further and show that there were visible
marks made by tools in entering the plaintiff's building from
the elevator shaft. The premises in question consisted of a
four-story building. The plaintiff occupied the three upper
floors, and a tenant of the plaintiff company occupied the
first floor. The tenant and the plaintiff, by the terms of the
lease, jointly used the elevator. The elevator was operated
in an inclosed shaft. From this inclosed shaft the entry to
the plaintiff's place of business was gained by forcing the
doors on the second and third floors. Entry to the fourth
floor was gained by a stairway leading from the third floor
to the fourth floor, and the door to the elevator shaft opened
from the inside. The doors to the elevator shaft were double
doors with hinges on either side and locked by an iron latch
fastened on one door, which slipped over a staple driven into
the opposite door, and the latch was then held in place by
a spike dropped through the staple. The instruction re-
quired the jury to find the forceful entry of these doors by
tools, which left visible marks of violence. The doors were
of wood covered with metal. There were evidences of
scratching by tools of some character upon the metal in at-
tempting to pry open the doors. The evidence was sufficient
from which the jury might find, as they did, that the doors
were forced by violence with tools in the hands of burglars.
The plaintiff was compelled to accept a greater burden under
this instruction than he was required to accept under the
policy of insurance. Therefore the error of the court in
its instruction was favorable to the defendant and prejudi-
cial to the plaintiff.

The defendant complains because the court refused to
grant its request for a view of the premises by the jury in
connection with the question of marks on the premises at
the place of entry. A view of the premises by the jury is

a matter of discretion with the court, and the court's refusal to grant such view will not be error unless there is a plain showing of abuse of discretion. *Pick v. Rubicon Hydraulic Co.* 27 Wis. 433, 446; *Serdan v. Falk Co.* 153 Wis. 169, 172, 140 N. W. 1035. At the opening of the trial counsel requested a view of the premises by the jury. During the trial the court announced to counsel that he would grant a view, and that the defendant should arrange to convey the jury to the premises. Thereupon defendant's counsel announced that if a view was desired he would renew his motion later. He renewed the motion at the close of the trial. Undoubtedly the court was of the opinion, when he granted the defendant's motion in the first place, that a view would be helpful to the jury in understanding the premises, but at the conclusion of the trial such view would be of little use to the jury on that question. The evidence showed that the conditions as to marks and scratches made by tools at the places of entry had substantially changed from the time of the burglary to the time of the trial. Under this view of the evidence the court was clearly within its discretion in denying counsel's motion at the conclusion of the trial.

It is contended that the trial court erred in instructing the jury with reference to burden of proof. The first and second questions were as follows:

"(1) On January 21 or 22, 1925, was there a loss, by burglary, of plaintiff's merchandise, occasioned by a person or persons who made a felonious entry into plaintiff's premises?

"(2) If you answer 'Yes' to the first question, then answer this question: Was such entry made by actual force and violence which produced visible marks made upon the premises at the place of entry by tools?"

The court instructed the jury:

"The burden of proof to establish the affirmative in answer to the first and second questions rests upon the plaintiff.

"This means as to these two questions that it is the duty of the plaintiff to satisfy or convince ten or more of you by a preponderance of the evidence and to a reasonable certainty that each of the several elements contained in these two questions existed so as to call for an affirmative answer as to the existence of each of such elements. If you are so satisfied as to the question you have under consideration, you will answer such question 'Yes.' If you are not so satisfied, you will answer such question 'No.'

"While the burden of proof to establish the loss by burglary and the other elements mentioned in the first and second questions rests upon the plaintiff as stated, yet in considering the specific contention made by the defendant's counsel in their arguments that the plaintiff or its president fraudulently committed acts which were knowingly and falsely represented by the plaintiff as the acts of burglars, you are instructed that in order that such specific contention may be found to be true, such fraudulent conduct must be established by evidence that is clear and satisfactory."

The defendant contends that the burden of proof rested with the plaintiff throughout, and objects to that part of the instruction which reads:

". . . You are instructed that in order that such specific contention may be found to be true, such fraudulent conduct must be established by evidence that is clear and satisfactory."

It must be noted that this instruction was given with reference to the arguments of defendant's counsel. The court said:

"In considering the specific contention made by the defendant's counsel in their arguments that the plaintiff or its president fraudulently committed acts which were knowingly and falsely represented by the plaintiff as the acts of burglars, you are instructed," etc.

The bill of exceptions does not contain the arguments of counsel to the jury, and we are left to infer what was said from the statement of the court in its instructions. It would seem that counsel argued that the president of the plaintiff

company was guilty of making the visible marks at the places of entry on the premises, in order to fraudulently represent that a burglary had been committed.   They were thus charging the plaintiff with a highly criminal act, and the court was correct in saying that this criminal act should be established by clear and satisfactory evidence.   *Wiesman v. American Ins. Co.* 184 Wis. 523, 533, 199 N. W. 55, 200 N. W. 304.   In any event, under all the circumstances, we do not regard this instruction as prejudicial to the defendant. The court had charged the jury where the burden of proof lay, and did not change the charge in that respect.

The defendant claims that the plaintiff is entitled to nothing because of its failure to keep books and accounts in such manner that the exact amount of the loss, if any, could be accurately determined therefrom by the company, and that the plaintiff was negligent in the preservation of its records. It is true that the plaintiff did not have a very accurate or complete set of books, but the evidence shows that the plaintiff kept its books in about the same manner as other companies carrying on the same class of business.   The plaintiff had, in the year preceding the burglary, employed an expert bookkeeper, who was gradually bringing about a satisfactory system of bookkeeping.   It appeared that a complete inventory had been made on the 1st of January preceding the burglary, by making an actual count of the different furs in stock and entering them on the inventory.   A similar inventory had been made for the year 1923.   All the invoices of purchases and sales had been preserved.   The bookkeeper had made a work sheet showing the transactions for the year 1924, which had been preserved.   He testified that from the books, inventories, checks, and stubs he was able to make a complete and accurate statement of the plaintiff's loss, and it satisfactorily appears that such a statement was made and furnished the defendant company.   We are satisfied that the evidence was sufficient to go to the jury on the question of

proof of loss. Under this provision of the policy substantial compliance is all that is required. 9 Corp. Jur. 1098 (note 50) ; 14 Ruling Case Law, p. 1140, § 323 ; 6 Cooley, Briefs on Insurance, 585, 586. There are cases holding to a strict compliance, but the majority rule is as stated, and we so hold.

The defendant is hardly in position to complain of the bookkeeping system. The plaintiff had had a small loss of furs by burglary in the preceding year, and the defendant's accountant had examined the plaintiff's books and adjusted the loss. He was fully aware of the manner in which the plaintiff kept its books, and failed to make any criticism thereof. The company thereafter continued the insurance and granted additional insurance with this information in its possession. *Welch v. Fire Asso.* 120 Wis. 456, 98 N. W. 227; *Coats v. Camden Fire Ins. Asso.* 149 Wis. 129, 133, 135 N. W. 524.

The complaint that the plaintiff was negligent in the preservation of its records is not substantiated by the evidence. The records were kept in an unlocked iron safe. It seems that the burglars entered the safe and scattered the records around the room. All the records were gathered up by the plaintiff and turned over to the defendant. Some sheets were missing, but the information therein contained was supplied by the bookkeeper of the plaintiff, who had a work sheet copied from these records, showing the facts.

The appellant complains that the trial judge erred in the admission and exclusion of certain evidence in connection with the question relating to books and accounts. The main contention of the defendant on this objection refers to a question put by the defendant to its expert accountant who had previously audited the books of the plaintiff in May, 1924, and again subsequent to January 22, 1925.

"Question: When you were given the books of the *Bloom Company* in 1925, after this robbery, to examine, did you

find them regularly kept and kept in such manner that the exact amount of the loss, if any, could be accurately determined by you?"

The plaintiff objected to the question for the reason that it called for a conclusion. The court sustained the objection on the ground that the question involved an issuable fact, and that the question was either one for the court or for the jury and not for the witness. The court held the witness could state the facts but not such a conclusion as called for in the question. We think the court was clearly right in its ruling. The matter was to be determined upon all the evidence on the subject by the court or a jury, and not by expert opinion.

The appellant contends that the court erred in not submitting to the jury the following question requested by it:

"Question: Did the *Max L. Bloom Company* regularly keep books and accounts in such manner that the exact amount of loss claimed as a result of the alleged burglary could be accurately determined from said books and accounts by the *United States Casualty Company?*"

There was no substantial dispute in the evidence as to the manner in which the books were kept, and it therefore became a question for the court to decide whether or not the bookkeeping method was a sufficient compliance with the policy requirements. The court was not required to submit the question to the jury.

It is contended that the trial judge erred in not reducing the judgment by the value of the goods incumbered by chattel mortgage. It appeared that the plaintiff had goods stored in a warehouse, and that it had a warehouse receipt for such goods, which it hypothecated with a loan company to secure a loan. Some few days before the burglary the plaintiff desired to obtain the goods so warehoused and put them in its premises, to be assorted and sold. It then applied to the loan company to get the warehouse receipt. The loan company gave up the receipt on condition that plaintiff would

take out more burglary insurance, and it was understood that when the sale of the goods was made, the loan company should have a bill of lading for security in place of the warehouse receipt. The plaintiff secured the goods from the warehouse and placed them in its premises, and they were there at the time of the burglary. The defendant contends that these goods were subject to a chattel mortgage, in violation of its contract of insurance. There is really nothing to this contention. When the loan company gave up its warehouse receipt it parted with its lien on the goods. The arrangement between the loan company and the plaintiff was one of pure accommodation, in which the loan company trusted to the honor of the plaintiff in place of its security.

The defendant objects to the plaintiff's theory of damages and to the amount of damages assessed. We have examined the record with some patience, and we come to the conclusion that this was a question for the jury under all the circumstances.

Finally, the defendant claims that two policies were voided by the action of the plaintiff in making certain assignments thereof after the burglary. The policies provided that—

"No. 7. This policy shall be void:

"(b) If the policy or any claim hereunder is assigned unless permission for such assignment is indorsed hereon and signed by an executive officer of the company."

We are of the opinion that the language of the policies, prohibiting assignment of the policies, refers only to assignments before loss, and does not refer to assignments of the choses in action after loss. If such be the construction, we should hold that the provision of the policy would be contrary to public policy and void.

In *Dogge v. Northwestern Nat. Ins. Co.* 49 Wis. 501, 503, 5 N. W. 889, the court held:

". . . Although the policy provides that an assignment thereof, without the consent of the company, will avoid the contract, yet the law is well settled that this only applies to

an assignment before a loss under it. After a loss, the claim, like any other chose in action, may be assigned without affecting the insurer's liability."

In *Alkan v. New Hampshire Ins. Co.* 53 Wis. 136, 144, 10 N. W. 91, this court passed upon a similar policy provision as here, and said:

"Was the policy invalidated by the assignment thereof by the assured to the plaintiff without the consent or knowledge of the defendant company? The contract of the insurer was, that in case the insured property should be destroyed by fire during a specified term—certain conditions in the contract being complied with by the assured,—the insurer would make good the loss to the amount named in the policy. After loss during the term, and compliance with such conditions, the obligation of the insurer to pay the loss became absolute. The demand against the insurer then became a mere chose in action for the sum payable pursuant to the contract. The relation between the assured and insurer thus became that of creditor and debtor, and the policy ceased to be significant except as evidence of the existence and amount of the debt. The assignment of the policy in form was in substance and effect an assignment of the debt which the insurer owed the insured. One of the incidents of ownership of a chose in action of this kind, arising *ex contractu,* is an absolute right to assign or transfer it."

The court there quotes with approval from the opinion in *West Branch Ins. Co. v. Helfenstein,* 40 Pa. St. 289, as follows:

"The policy, bristling all over with sharp conditions, has one for this occasion, and the company attempt to impale the plaintiff upon it. The condition is, that neither the policy nor any claim thereunder shall be assigned, either prior or subsequent to a loss, except with the consent of the corporation, manifested in writing; and in case of transfer without corporate consent, 'this policy shall thenceforth be void and of no effect; and any liability of said corporation upon such claim shall thenceforth cease.' However competent it was for the company to make their contract of insurance depend-

ent on such a condition, it was not competent for them to limit the legal effect of a claim thereunder after loss. Helfenstein acquired, by reason of the loss, a legal right to receive so much money at the hands of the company. That chose in action he might assign. If not assigned before suit, the writ was properly issued in his name alone; if assigned after suit, the court will see that the money, when paid by the defendant, goes to the proper party. But the condition appealed to is no defense for the company. If it is applicable to a case circumstanced like this, it is void and null, because opposed to the law of the land."

The defendant cites to the contrary *McQuillan v. Mutual Reserve Fund Life Asso.* 112 Wis. 665, 87 N. W. 1069, 88 N. W. 925. There is language in that case that seems to uphold defendant's contention, but the facts in that case were substantially different from those in the *Alkan Case.* The *Alkan Case* was not cited in the *McQuillan Case,* nor was it then, or has it since been, overruled.

2 Wood, Insurance (2d ed.), p. 758, says:

"After a loss, the *delectus personæ* no longer becomes material, and even though the policy prohibits such an assignment and provides that, if so assigned, the policy shall be void, it is held that such prohibition is void, as the insurer cannot restrict the assignment of a debt. The reasons that induce the restrictive clause have no existence or application after the risk has ceased."

We adhere to the rule of the *Alkan Case.*

There were some minor objections to the judgment urged by the appellant, which have received our attention, but they are not deemed of sufficient importance to require further consideration here.

*By the Court.*—The judgment of the circuit court is affirmed.

A motion for a rehearing was denied, with $25 costs, on January 11, 1927.