# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.: 2021AP635

†Petition for Review filed

Complete Title of Case:

**PEPSI-COLA METROPOLITAN BOTTLING COMPANY, INC.,**

**PLAINTIFF-APPELLANT,**

**V.**

**EMPLOYERS INSURANCE COMPANY OF WAUSAU,**

**DEFENDANT-RESPONDENT.†**

| | |
|---|---|
| Opinion Filed: | July 8, 2022 |
| Submitted on Briefs: | April 14, 2022 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Neubauer, Grogan and Kornblum, JJ. |
| Concurred: | |
| Dissented: | Grogan, J. |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Lee M. Seese* of *Michael Best & Friedrich LLP*, Milwaukee, WI. |
| Respondent ATTORNEYS: | On behalf of the defendant-respondent, the cause was submitted on the brief of *Michael J. Cohen* of *Miesner Tierney Fisher & Nichols S.C.*, Milwaukee, WI. |

A nonparty brief was filed by *Robert Gilbert* of *Latham & Watkins, LLP* of Boston, Massachusetts, for Wisconsin Manufacturing & Commerce and Emerson Electric Company.

A nonparty brief was filed by *James A. Friedman* of *Godfrey & Kahn, S.C.* of Madison, Wisconsin, for Wisconsin Insurance Alliance.

COURT OF APPEALS
DECISION
DATED AND FILED

July 8, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP635**

**STATE OF WISCONSIN**

Cir. Ct. No. **2019CV1307**

**IN COURT OF APPEALS**

---

PEPSI-COLA METROPOLITAN BOTTLING COMPANY, INC.,

   PLAINTIFF-APPELLANT,

V.

EMPLOYERS INSURANCE COMPANY OF WAUSAU,

   DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Waukesha County: RALPH M. RAMIREZ, Judge. *Reversed and cause remanded with directions.*

Before Neubauer, Grogan and Kornblum, JJ.

¶1 KORNBLUM, J. Pepsi-Cola Metropolitan Bottling Company, Inc. (Pepsi) appeals an order of the circuit court denying its motion for partial summary judgment against Employers Insurance Company of Wausau (Wausau) and granting Wausau's cross-motion for summary judgment. Pepsi contends that it is the

assignee of rights under several liability insurance policies Wausau issued from 1963 to 1971 to two Waukesha foundry companies, whose pump products are alleged to have caused asbestos injuries. Pepsi contends that Wausau had a duty to indemnify it and, at issue in its motion for partial summary judgment on appeal, to defend it against asbestos exposure allegations raised by Roger Huff, a mesothelioma claimant who identified the pump products as a source of his alleged asbestos injury. Wausau refused to defend the suit, contending that the anti-assignment clause in its policies precludes indemnity coverage for injuries sustained during the coverage period for the insured corporations because the right to insurance was assigned to successor companies without Wausau's consent. Wausau further contends that even if the anti-assignment provision is unenforceable, two breaks in the assignment during the chain of corporate succession preclude coverage. Finally, Wausau contends that the Huff complaint fails to allege facts sufficient to trigger its duty to defend. We disagree with Wausau, as well-established law compels an opposite conclusion. Accordingly, we reverse the circuit court's decision granting summary judgment to Wausau and denying summary judgment to Pepsi. On remand, the circuit court should grant Pepsi's motion for summary judgment on its Declaratory Judgment-Duty to Defend claim and conduct further proceedings as necessary and consistent with this opinion.

## BACKGROUND

### A. The Policies

¶2 This is an insurance dispute arising out of a history of assignments and transfers going back more than half a century. The history begins in 1963, when Wausau issued primary and umbrella liability insurance policies to Waukesha Foundry Company (Old Waukesha). These policies were in effect from 1963 to

1968. The Wausau policies generally provide that Wausau "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of … bodily injury or … property damage … caused by an occurrence." The policy defines "occurrence" as "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

¶3 The policies require Wausau to defend any suit against the insured seeking damages on account of such bodily injury or property damage, "even if any of the allegations of the suit are groundless, false or fraudulent." The policies further contained what is commonly referred to as an anti-assignment clause, stating in relevant part that "[a]ssignment of interest under this policy shall not bind the company until its consent is endorsed hereon[.]"

### B. The Corporate Succession and Assignment History

¶4 In August 1968, Old Waukesha assigned and transferred all of its assets and liabilities to Illinois Central Industries, Inc. (I.C.). The parties entered into an "Agreement and Plan of Reorganization" (Reorganization Agreement) on August 16, 1968, whereby I.C. acquired substantially all of the assets and liabilities of Old Waukesha through a new wholly-owned subsidiary, to be called Waukesha Foundry Company, Inc. (New Waukesha). New Waukesha was to take over the Old Waukesha business, and Old Waukesha would dissolve. According to the Reorganization Agreement, New Waukesha acquired "substantially all of the property, assets and business" of Old Waukesha, as well as "all the liabilities … other than those expressly excepted." Regarding assumption of liabilities, the agreement states as follows:

> At the Closing I.C. shall cause [New Waukesha] by appropriate written instrument or instruments to assume and agree to pay, perform and discharge when due all of the debts, liabilities, obligations and contracts of [Old Waukesha] existing on the Closing Date, except the following:
>
> (a) liabilities against which [Old Waukesha] is insured or otherwise indemnified to the extent of such insurance or indemnification.

The closing was set for August 30, 1968.

¶5     The reorganization was accomplished by closing on August 30, 1968. At the closing, Old Waukesha and New Waukesha signed two documents concerning the liabilities and assets transferred between the two companies. An "Assumption and Liabilities" agreement required New Waukesha to "assume and agree to pay, perform and discharge when due all of the debts, liabilities, obligations and contracts of [Old Waukesha] existing" as of the closing date. Consistent with the Reorganization Agreement, the Assumption and Liabilities agreement excepted "liabilities against which [Old Waukesha] is insured or otherwise indemnified to the extent of such insurance." A separate agreement, a "Bill of Sale and General Assignment," conveyed, among other things, "all" of Old Waukesha's "rights under contracts, insurance policies … claims, rights, [and] choses in action" to New Waukesha. Wausau issued new policies to New Waukesha which ran from 1968 through 1971. As to the provisions at issue here, the new policies contained the same language as the policies issued to Old Waukesha.

¶6     In 1974, New Waukesha merged with Abex Corporation (Abex). The merger left Abex as the surviving corporation, with Abex succeeding to all the assets and liabilities of New Waukesha by operation of law, including rights as a successor in interest to New Waukesha's insurance policies.

¶7 On August 23, 1990, Abex entered into an Assignment and Assumption Agreement whereby it assigned all of its assets and rights to PA Holdings Corporation, its sole stockholder. Abex then dissolved. Under the agreement, Abex transferred "all of [Abex's] right, title and interest in, to and under all of the assets, properties and rights of [Abex] of every type and description, of every kind and nature, owned or held by [Abex]." The agreement stated further that the general assignment of Abex's assets did not include those that were "not capable of being Transferred … without the consent, approval or waiver of a third person or entity." On November 1, 1990, PA Holdings Corporation changed its name to Pneumo Abex Corporation.

¶8 Pneumo Abex Corporation remained as the surviving corporate entity from 1990 until 2004, when it merged with and into Pneumo Abex, LLC. Pneumo Abex Corporation then ceased to exist. Pneumo Abex, LLC, is the successor in interest to Abex, which in turn is the successor in interest to New Waukesha.

¶9 In 2019, Pneumo Abex, LLC and Pepsi entered into assignment agreement, whereby Pneumo Abex, LLC stated that it was the successor in interest to the Waukesha foundry companies, that Pepsi is the "net-of-insurance" indemnitor of Pneumo Abex, LLC for numerous asbestos suits relating to the Waukesha entities, and that Pneumo Abex, LLC assigned its rights under the Wausau policies to Pepsi.[1]

---

[1] "Net of insurance" indemnification means that, with respect to liability for qualifying claims, including the Waukesha asbestos lawsuits, Pepsi is entitled to Pneumo Abex, LLC's insurance recoveries applicable to claims for which Pepsi indemnifies Pneumo Abex, LLC. It is undisputed that Pepsi's indemnification of Pneumo Abex, LLC would not bar recovery.

## C. *The asbestos suits and summary judgment motions*

¶10     Over 100 plaintiffs alleged injurious asbestos exposure attributed to a pump manufactured by the Waukesha foundry companies (Waukesha asbestos lawsuits). As relevant to this appeal, in 2017, Huff, a mesothelioma claimant, filed a lawsuit in Missouri state court against "Pneumo Abex, LLC, as Successor in Interest to Abex Corporation," among other defendants. The complaint alleged that Huff was exposed to asbestos during the Wausau policy periods and that the defendants "manufactured, designed, labeled, distributed, supplied, or sold" the asbestos products which caused his injury. The complaint alleged, among other things, claims for negligence, strict liability, and conspiracy against the defendants.

¶11     Pepsi tendered defense to Wausau, asserting that Pneumo Abex, LLC was entitled to coverage under the Old Waukesha and New Waukesha polices. Wausau denied coverage, stating, as relevant to this appeal, that "it appears that Pneumo Abex, LLC is being sued not for any liabilities related to Waukesha Pump, but for the historical liabilities of Abex Corporation."

¶12     Pepsi then paid defense and settlement costs relating to some of the Waukesha asbestos lawsuits, including Huff's action. In 2019, Pneumo Abex, LLC, assigned to Pepsi the right to pursue and keep insurance proceeds for the Waukesha asbestos lawsuits under the Wausau policies. Pepsi then commenced this action seeking a determination of Wausau's duties to defend the Waukesha asbestos lawsuits and to indemnify Pepsi. As relevant to this appeal, Pepsi moved for partial summary judgment as to the Huff complaint, arguing that Pneumo Abex, LLC, was a successor to insurance rights under the Wausau policies, thus triggering Wausau's duty to defend the Huff complaint. Pepsi further alleged that Wausau previously defended other asbestos-related lawsuits in which Pneumo Abex, LLC, was a named

defendant. Wausau opposed the motion and filed a cross-motion for summary judgment seeking to dismiss Pepsi's claims not only with respect to the Huff complaint, but to all of the Waukesha asbestos lawsuits on the grounds that Pneumo Abex, LLC, was not a successor in interest to rights under either the Old Waukesha or the New Waukesha policies and, accordingly, could not claim the rights of an "insured." Specifically, Wausau argued that in order for Pepsi to succeed on its claims, it had to prove an unbroken chain of transferred policy rights from Old Waukesha to New Waukesha and then through the transaction history to Pneumo Abex, LLC, which it could not do pursuant to the policies' anti-assignment provision.

¶13 The circuit court, relying on our decision in *Red Arrow Products Co., Inc. v. Employers Insurance of Wausau*, 2000 WI App 36, 233 Wis. 2d 114, 607 N.W.2d 294, agreed with Wausau. Specifically, the court found that the anti-assignment provisions in the Wausau policies prevented any transfer of insurance rights without Wausau's consent. The court also found that Pepsi had failed to demonstrate a transfer of insurance rights from either Old Waukesha to New Waukesha or from Abex to PA Holdings. Consequently, the court denied Pepsi's motion for partial summary judgment and granted Wausau's motion for summary judgment. Pepsi now appeals.

## DISCUSSION

### I. Standard of Review

¶14 "We review *de novo* a circuit court's ruling on summary judgment, and apply the same legal principles." *Chapman v. B.C. Ziegler & Co.*, 2013 WI App 127, ¶2, 351 Wis. 2d 123, 839 N.W.2d 425. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2) (2019-20). The purpose of summary judgment is "to avoid trials when there is nothing to try." *Tews v. NHI, LLC*, 2010 WI 137, ¶42, 330 Wis. 2d 389, 793 N.W.2d 860.

## II. The Anti-Assignment Clauses

¶15 We begin with the question at the center of this appeal: whether the anti-assignment provisions in Wausau's policies preclude coverage because those rights could not be transferred from Old Waukesha to New Waukesha in 1968, and again from Abex to PA Holdings in 1990. We conclude that consistent with long-standing Wisconsin law, the anti-assignment provisions in Wausau's policies are not enforceable as to these assignments because the assignments are "post-loss." We hold that notwithstanding the language in the anti-assignment clauses requiring insurer consent, such consent is not required for an assignment of insurance recovery rights made after a "loss" has occurred under an occurrence-based policy. Here, Huff's alleged asbestos exposure was the "occurrence," and because it took place during the relevant coverage periods, the loss had already occurred prior to any transfer. *See, e.g., Plastics Eng'g Co. v. Liberty Mutual Ins. Co.*, 2009 WI 13, ¶31, 315 Wis. 2d 556, 759 N.W.2d 613. Accordingly, the anti-assignment provisions did not relieve Wausau of the duty to defend Huff's case.

¶16 Wausau's policies at issue in this case were issued to Old Waukesha from 1963-1968, and then to New Waukesha from 1968-1971. Huff alleges his exposure occurred during the Wausau policy periods. The policies are substantially the same, providing coverage for an "occurrence," which is defined as "an accident, including injurious exposure to conditions, which results, during the policy period,

in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Occurrence-based policies are "triggered" by the occurrence of property damage or bodily injury during the policy period, even if the damage or injury is not discovered until much later. *See id.,* ¶53. As relevant to this appeal, "exposure to asbestos falls within an exposure to conditions" as referenced in the policies because "[w]ithout exposure, no bodily injury takes place." *See id.*, ¶31.[2]

¶17 As noted above, the Waukesha foundry companies went through a series of transfers that purported to assign the right to insurance with those transfers. The occurrence-based policies at issue here contain an "anti-assignment" clause, which provides as follows: "Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon[.]" The purpose of a non-assignment clause is to protect the insurer from increased liability. After the loss has occurred, assignment of the right to recover under the policy does not increase the insurer's risk. *See* 3 STEVEN PLITT ET AL., COUCH ON INSURANCE § 35:8 (3d ed. 1995). In this case, the assignment was after the loss already had occurred (post-loss).

¶18 Wisconsin has been among the majority of states following the general maxim that

> policies prohibiting assignments of the policy, except with the consent of the insurer, apply only to assignments before loss, and do not prevent an assignment after loss, for the obvious reason that the clause by its own terms ordinarily prohibits merely the assignment of the policy, as distinguished from a claim arising under the policy, and the assignment before loss involves a transfer of a contractual

---

[2] A claims-made-and-reported policy provides that the policy only provides coverage if the policy holder makes the claim during the policy period. *Anderson v. Aul*, 2015 WI 19, ¶3, 361 Wis. 2d 63, 862 N.W.2d 304.

> relationship while the assignment after loss is the transfer of
> a right to a money claim.

*Id.* (footnote omitted). Thus, an anti-assignment provision "prohibiting an assignment after loss has occurred is generally regarded as void, in that it is against public policy to restrict the relation of debtor and creditor by restricting or rendering, subject to the control of the insurer, an absolute right in the nature of a chose in action." *Id.*, § 35:9. The "loss" referred to in an occurrence-based policy is the actual "occurrence"; here, the "loss" is the asbestos exposure that allegedly took place during the Wausau policy periods. *See Plastics Eng'g Co.*, 315 Wis. 2d 556, ¶31; COUCH ON INSURANCE § 35:8 (equating loss with "events giving rise to the insurer's liability").

¶19 Since 1880, Wisconsin case law has applied this general rule. In a case involving a post-loss assignment, the Wisconsin Supreme Court held that rights under an insurance policy are freely assignable *after a loss* with or without insurer consent:

> [A]lthough the policy provides that an assignment thereof, without the consent of the company, will avoid the contract, yet the law is well settled that this only applies to an assignment before a loss under it. After a loss, the claim, like any other chose in action, may be assigned without affecting the insurer's liability.

*Dogge v. Northwestern Nat'l Ins. Co.*, 49 Wis. 501, 503, 5 N.W. 889 (1880). The supreme court revisited this issue a year later, in *Alkan v. New Hampshire Ins. Co.*, 53 Wis. 136, 147, 10 N.W. 91 (1881), another post-loss assignment case, when it held that "the assignment of the policy to the plaintiff after the loss does not render the policy void." Similarly, the supreme court in *Max L. Bloom Co. v. United States Casualty Co.*, 191 Wis. 524, 210 N.W. 689 (1926), yet another post-loss assignment case, drew upon its previous opinions in holding:

10

> [T]he language of the policies, prohibiting assignment of the policies, refers only to assignments before loss, and does not refer to assignments of the choses in action after loss. If such be the construction, we should hold that the provision of the policy would be contrary to public policy and void.

*Id.* at 535.[3]

¶20 Indeed Wisconsin has long been regarded as a jurisdiction that has never applied anti-assignment clauses to bar post-loss assignment of rights. By 1926, Wisconsin was one of the states adhering to the "universally accepted rule" that after a loss,

> the claim to recover that loss may be effectively assigned by the insured, so as to vest in the assignee the absolute right to the insurance, provided, of course, the insured himself had that right at the time when the loss was incurred, and that the assignment itself was otherwise valid.

Annotation, Claim under contract of property insurance as assignable after loss, 56 A.L.R. 1391 (1928).

---

[3] That these Wisconsin cases involved first-party liability claims by the insureds does not change the analysis. As noted above, the purpose underlying an anti-assignment provision is to protect the insurer from increased liability. In the case of a first-party claim, an assignment of a claim for the right to recover after a loss does not increase the insurer's liability, it merely changes the identity of the person or entity to whom the insurer's duty to indemnify is owed. So too in the context of a third-party liability claim. If the facts giving rise to the claim place it within the scope of the liability policy, then the insurer's duties to defend and indemnify are triggered. An assignment of rights to recover under the policy that occurs after the loss or "occurrence" that exposes the insured to liability does not increase the insurer's liability but instead changes the identity of the person or entity entitled to assert claims for defense and indemnity under the policy. As the supreme court has repeatedly held, "[a]fter a loss, the claim, like any other chose in action, may be assigned without affecting the insurer's liability." ***Dogge v. Northwestern Nat'l Ins. Co.***, 49 Wis. 501, 503, 5 N.W. 889 (1880). Thus, we see no legal support for distinguishing between the assignment of claims for defense versus indemnity—both claims can be assigned post-loss. Moreover, in this case, and as is well-established under Wisconsin law, the duty to defend is dependent upon the duty to indemnify, which Wausau clearly recognizes with its arguments that the anti-assignment provisions preclude indemnity coverage, and therefore, there is no duty to defend. In short, a holding that an anti-assignment clause is *not* enforceable for purposes of an indemnity claim, but *is* enforceable for purposes of duty to defend claim finds no support in Wisconsin law.

11

¶21 The Supreme Court of California aptly explained the purpose of anti-assignment clauses and the policy implications of enforcing such clauses after a loss has occurred:

> The recognized rationale for enforcing a consent-to-assignment clause is to protect an insurer from bearing a risk or burden relating to a loss that is greater than what it agreed to undertake when issuing a policy. It is undisputed that an insured may not transfer *the policy itself* to another without the insurer's consent, and in this sense all parties agree. But the "postloss exception" to the general rule restricting assignability … is itself a venerable rule that arose from experience in the world of commerce. The rule has been acknowledged as contributing to the efficiency of business by minimizing transaction costs and facilitating economic activity and wealth enhancement.

*Fluor Corp. v. Superior Ct.*, 354 P.3d 302, 329-30 (Cal. 2015) (citation omitted). The court went on:

> "[A] major rationale for commercial insurance is to facilitate economic activity and growth by providing risk management protection for economic actors .... In the modern American economy, mergers, acquisitions, and sales are part of corporate life. For the most part, economists approve of this activity because it allows the marketplace to allocate resources to their most profitable uses. To the extent that insurance protection (for past but possibly unknown losses) may be more freely assigned as part of corporate recombinations, this lowers transaction costs and facilitates economic activity and wealth enhancement. Consequently, the general rule permitting post-loss assignment is a good rule—which is why the courts have crafted it over the years even though it appears to contradict the clear text of many insurance policies and the courts' expressed fidelity to contract language. The post-loss exception to the general rule of restricted insurance assignability is a venerable rule borne of experience and practicality. That is why courts have adopted it." The post-loss rule prevents an insurer from engaging in unfair or oppressive conduct—namely, precluding assignment of an insured's right to invoke coverage under a policy attributable to past time periods for which the insured had paid premiums.

*Id.* at 330 (alteration in original, citation omitted); *see also **Ocean Accident & Guar. Corp. v. Southwestern Bell Tel. Co.**,* 100 F.2d 441, 446 (8th Cir. 1939) (a post-loss assignment is not the assignment of the policy itself but rather "the assignment of a claim, or debt, or chose in action").[4]

¶22 Wausau argues that our decision in ***Red Arrow*** controls this case. Based on ***Red Arrow***, Wausau contends that without its consent, "there could be no transfer of insurance rights in 1968 from Old Waukesha to New Waukesha, or in 1990 from Abex (New Waukesha's successor by merger) to PA Holdings, even if the applicable transactional documents attempted to transfer those rights." In ***Red Arrow***, we wrote that the anti-assignment provision in Wausau's policies "makes clear that without Wausau's permission, no assignee or transferee has any rights to any benefits under the Wausau policies." 233 Wis. 2d 114, ¶21. This is the statement upon which Wausau hangs its hat.

---

[4] We rest our holding firmly on long-established Wisconsin law. However, we are mindful that Wisconsin has long been a leader in this area of insurance law. In ***Ocean Accident & Guarantee Corp. v. Southwestern Bell Telephone Co.,*** 100 F.2d 441 (8th Cir. 1939), the Eighth Circuit Court of Appeals reviewed the law regarding enforceability of insurance clauses prohibiting assignment without consent. The court cited our decision in ***Dogge*** as one of the cases in the "great weight of authority" settling the law that once an insurer's liability has become fixed, it, "like any other chose in action was assignable regardless of the conditions of the policy in question." *Id.* at 445. In ***Fluor Corp. v. Superior Court***, 354 P.3d 302 (Cal. 2015), the California Supreme Court followed ***Ocean Accident,*** and thoughtfully traced the precepts from that case to present day supporting the general rule that an anti-assignment clause is not enforceable post-loss. *Fluor*, 354 P.3d at 325-328. The court then interpreted the California statute consistently with that general rule. *Id.* at 329-330. We find the court's analysis to be a useful reminder that routine business transactions include the transfer of a predecessor's historical liabilities accompanied by the transfer of claims for the predecessor's right to recover under its insurance policies for those historical losses. The transfer of liabilities and the corresponding assets (the right to recover insurance for those liabilities) has been firmly embedded in corporate law, and as applicable here, the black letter law recognized in the above-cited three Wisconsin Supreme Court cases.

¶23 We disagree that **Red Arrow** changed Wisconsin law regarding the enforceability of anti-assignment clauses for post-loss assignments. That sentence is extraneous to the holding based on the facts underlying **Red Arrow**. Unlike the present case, we were not called upon to examine the enforceability of an anti-assignment clause in **Red Arrow** because both parties in that case agreed that there had been no transfer of the recovery rights under the insurance policies to begin with. 233 Wis. 2d 114, ¶¶7, 14. As we noted, "New Red Arrow does not dispute that the Wausau policies were not … included in the sale." *Id.*, ¶7. Thus, the court did not need to decide whether there was as assignment of the rights to recover under the policies—the parties stipulated to the fact that there was not. It follows that whether the terms of the policies precluded an assignment was not at issue; the provision was irrelevant. The only issue before the court was whether the successor was entitled to coverage by operation of law, when it had no contractual right to coverage. *Id.*, ¶¶7, 20, 22. The **Red Arrow** court's answer was no. *Id.*, ¶35.

¶24 Because there was no assignment of rights under the insurance policies in **Red Arrow**, our undeveloped comment about a hypothetical effect of the anti-assignment provision in Wausau's policies had no bearing on the issue actually litigated in the case and certainly did not (and could not) overrule a century of Wisconsin Supreme Court precedent, none of which it even mentioned.

¶25 Indeed, the only case we cited in **Red Arrow** on this point, ***Loewenhagen v. Integrity Mutual Insurance Co.***, 164 Wis. 2d 82, 473 N.W.2d 574 (Ct. App. 1991), involved an alleged assignment of benefits that occurred *before* the loss for which coverage was claimed. **Red Arrow**, 233 Wis. 2d 114, ¶21. In **Loewenhagen**, 164 Wis. 2d at 86, the buyer of a used car had an accident with Loewenhagen on the evening of the same day he purchased the car. The buyer had obtained (but had not registered) title to the car and had not obtained his own

insurance. *Id.* The seller's policy was in effect at the time of the accident merely because the seller had not called his insurance agent to cancel it. *Id.* Loewenhagen sought coverage from the seller's insurance company on several grounds, including that the seller's insurance agent had "agree[d] to an assignment of the policy" by making cancellation of the seller's policy effective several days after the sale, rather than on the date of sale. *Id.* at 92. The court of appeals rejected Loewenhagen's argument based on the policy language prohibiting assignment "without [the insurer's] *written* consent." *Id.* Thus, the passing reference to anti-assignment clauses in *Red Arrow* is grounded in *Loewenhagen*'s analysis of a purported *pre-loss* assignment, a situation that is materially distinguishable from the present case.

¶26 Notwithstanding the factual and legal distinctions between the present case and *Red Arrow,* Wausau argues that we must follow it. We disagree that we must interpret the language in *Red Arrow* as binding precedent that implicitly overrules a century of Wisconsin law.

¶27 As our supreme court observed in *Zarder v. Humana Insurance Co.*, 2010 WI 35, ¶52 n.19, 324 Wis. 2d 325, 782 N.W.2d 682, Wisconsin courts have formulated two definitions of dicta. Under one line of cases, dicta has been defined as "a statement or language expressed in a court's opinion which extends beyond the facts in the case and is broader than necessary and not essential to the determination of the issues before it." *State v. Sartin*, 200 Wis. 2d 47, 60 n.7, 546 N.W.2d 449 (1996). The other definition holds that a court's discussion of a question that is germane to a controversy is *not* dictum even if it is "not necessarily decisive of … the controversy" but rather is "a judicial act of the court which it will thereafter recognize as a binding decision." *State v. Picotte*, 2003 WI 42, ¶61, 261 Wis. 2d 249, 661 N.W.2d 381 (citation omitted).

¶28    Under these standards, we conclude that the language in *Red Arrow* regarding the effect of the anti-assignment clause is dicta.  Under the definition set forth in *Sartin*, the statement about the anti-assignment clause extended beyond the facts in *Red Arrow* because it was undisputed that the rights to recover under the insurance contracts were not assigned.  Thus, the statement was "broader than necessary and not essential to" determine whether there had been an assignment by operation of law.  *Sartin*, 200 Wis. 2d at 60 n.7.  Under the definition set forth in *Picotte*, the statement in *Red Arrow* was not "germane to … the controversy" because there was no controversy with respect to the anti-assignment clause in that case.  *Picotte*, 261 Wis. 2d 249, ¶61.  For these reasons, we conclude that *Red Arrow* does not control the outcome in this case.[5]

¶29    Accordingly, we reaffirm Wisconsin's longstanding rule that an anti-assignment clause in an occurrence-based policy is unenforceable when the assignment is made post-loss.  Old Waukesha and New Waukesha already paid the premiums for these policies to protect against the loss that is claimed here.  The assignment of Old Waukesha and New Waukesha's rights to assert claims seeking recovery under the policies did not increase Wausau's coverage risks because the alleged occurrences had already taken place.  While the loss that took place during the policy periods may not be known for many years, it allegedly occurred during Wausau's policy periods.  In reliance on longstanding Wisconsin law, the right to

---

[5] The dissent cites Judge Brown's concurring opinion in *State v. Sanders*, 2007 WI App 174, ¶41, 304 Wis. 2d 159, 737 N.W.2d 44 (Brown, J., concurring) but that opinion supports our determination that Paragraph 20 in *Red Arrow* is dicta.  Dissent, ¶4.  In *Sanders*, Judge Brown separately expressed his view that lawyers too frequently attempt to avoid language unfavorable to their positions by labelling it dicta, and that that term should apply only to "those situations where a court notes, in passing, that a certain issue is lurking in the background, gives its off-the-cuff opinion without analysis and leaves it at that."  *Sanders*, 304 Wis. 2d 159, ¶41 (Brown, J., concurring).  In *Red Arrow*, the anti-assignment provision was not even lurking in the background, and the off-the-cuff statement lacked supporting analysis, as evidenced by the citation to a pre-loss case.

make claims under the insurance was assigned post-loss to subsequent entities. Such assets would prove illusory if post-loss assignments made in reliance on longstanding Wisconsin law are retroactively disallowed.

¶30 Wausau raises an additional argument, that an assignment is not post-loss unless the loss has actually been reported, and the insurance company knows that it will have liability. Wisconsin law is clear under the "known loss doctrine" that the loss arises at the time of the injury, not when a lawsuit is filed. The known loss doctrine holds that insurers are not obligated under third-party liability policies to provide coverage for injury or damage which was already occurring when the coverage is written or which has already occurred, and about which the insured knew. *American Fam. Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶86, 268 Wis. 2d 16, 673 N.W.2d 65; *American Fam. Mut. Ins. Co. v. Bateman*, 2006 WI App 251, ¶26, 297 Wis. 2d 828, 726 N.W.2d 678. Wausau's interpretation of an "occurrence" under its policy also is contrary to the plain language of the policy. An "occurrence" under the policy is "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Nothing in the policy refers to an "occurrence" as requiring notice of potential legal liability. In addition, the policy does not distinguish between bodily injury and property damage. We reject this attempt to avoid coverage by redefining the terms of the policy. The insurer's liability is established by the occurrence of the actual injury, not by the reporting of the injury prior to assignment.

¶31 We therefore affirm Wisconsin's longstanding rule, agreeing with the majority of jurisdictions, that post-loss assignments of insurance rights under an occurrence policy do not require consent to assignment.

### III.  *Corporate Succession*

¶32   Wausau contends that even if the anti-assignment provision is unenforceable, Pepsi still cannot succeed on its claims because Old Waukesha's rights under the Wausau policies were never assigned to New Waukesha, and subsequently Pneumo Abex, LLC, via corporate transactional documents. Specifically, Wausau argues that Pepsi failed to produce evidence showing a specific list of insurance policies that were transferred from Old Waukesha to New Waukesha as part of the 1968 Reorganization Agreement.  Wausau also contends that Pepsi failed to produce evidence that the Wausau policies, or any rights thereunder, were transferred to PA Holdings as part of the 1990 dissolution of Abex. We disagree.

### A.  *1968 Transfer of Rights from Old Waukesha to New Waukesha*

¶33   As relevant to this appeal, the Reorganization Agreement stated the following regarding Old Waukesha's insurance policies:

> [Old Waukesha] has delivered to I.C. a Schedule of Contracts listing and summarizing the pertinent terms of all of the ... insurance policies ... and any other material contracts or proposals to which [Old Waukesha] is a party ... and all material amendments thereof ….  All of said contracts, agreements and commitments are assignable to [New Waukesha], except as specified in the Schedule, and at the Closing Date [Old Waukesha] shall deliver to I.C. any consents to assignment that may be required.

¶34   Wausau contends that because Pepsi did not produce a complete Schedule containing the Old Waukesha policy, we cannot conclude that either the policy or the rights to recovery transferred to New Waukesha.  We disagree.  The language of the Reorganization Agreement, dated and signed on August 16, 1968, expressly states that the transfer includes all liabilities unless they are expressly

18

excepted. New Waukesha would also receive all assets, "tangible and intangible, real, personal and mixed." The agreement excepted "liabilities against which [Old Waukesha] is insured or otherwise indemnified to the extent of such insurance or indemnification." Certain documents were required to be transferred at closing.

¶35 On the date of closing, August 30, 1968, Old Waukesha and New Waukesha signed a Bill of Sale, which applies to the parties as well as their respective successors and assigns. The Bill of Sale assigned "all the property and assets, tangible and intangible, of every kind, nature and description and wherever situated, owned, possessed or held by [Old Waukesha]," including its "rights under contracts, insurance policies … claims, rights, [and] choses in action." The Bill of Sale transferred to New Waukesha "all of [Old Waukesha's] right, title and interest in, to and under each of said contracts, agreements, commitments and arrangements," including, but not limited to, "insurance policies" and "group insurance policies." New Waukesha expressly accepted this transfer.

¶36 Wausau argues that the Bill of Sale's language is more general than that of the Reorganization Agreement and therefore we should accept the Reorganization Agreement as the operational document. We disagree. The contents of the schedule referenced in the Reorganization Agreement would only be relevant if the Bill of Sale stated that New Waukesha only acquired the contract rights identified on the Schedule. The use of the term "all" in the Bill of Sale expressed Old Waukesha's intent to transfer all contract rights to New Waukesha. In short, the Bill of Sale is the operative agreement that actually effectuated the transfer of all of Old Waukesha's rights—including its rights under the Wausau policies—to New Waukesha. *See Bank of America NA v. Neis*, 2013 WI App 89, ¶48, 349 Wis. 2d 461, 835 N.W.2d 527 (citing *McDonald v. Nat'l Enters., Inc.*, 547 S.E.2d 204, 210 (Va. 2001)) (noting that a bill of sale and assignment of loans was "an operative

19

legal document that embodies and evidences [a] conveyance") (alteration in original).

*B. 1990 Transfer of Rights from Abex to PA Holdings and Pneumo Abex LLC*

¶37    Wausau also contends that another break in the chain of corporate succession precluded the transfer of insurance rights to Pneumo Abex, LLC.[6]  This was the 1990 transfer of Abex's assets to PA Holdings.  We conclude that the right to recovery under the Wausau policies was similarly assigned.  The assignment agreement notes that PA Holdings, prior to the assignment, was the sole shareholder of Abex.  As a result of the assignment, Abex dissolved and PA Holdings became the surviving corporation.  The assignment agreement between Abex and PA Holdings transferred "all of [Abex's] right, title and interest in, to and under all of the assets, properties and rights of [Abex] of every type and description, of every kind and nature, owned or held by [Abex] …."  The only limitation on this broad assignment concerned assets that were "not capable of being Transferred … without the consent, approval or waiver of a third person or entity."  Wausau argues that the anti-assignment provisions of its policies preclude the transfer here.  We already have discussed that argument and reject Wausau's position for the reasons stated above.

¶38    Accordingly, we conclude that the insureds' rights under the Wausau policies were continuously assigned through each of the corporate transactions and mergers, including the 1968 transition from Old Waukesha to New Waukesha, the

---

[6] Wausau does not dispute that New Waukesha merged into Abex, nor does it challenge the transfer of rights under the insurance policies from New Waukesha to Abex.

1990 assignment of rights from Abex to PA Holdings, and later to Pneumo Abex, LLC.

## IV. *The Huff Complaint*

¶39 Finally, Wausau argues that even if the insurance rights transferred to Pnuemo Abex, LLC—and subsequently, to Pepsi—it has no duty to defend the Huff lawsuit. The crux of Wausau's argument is that Huff's complaint does not allege claims that are covered by either the Old Waukesha or New Waukesha polices. Wausau also contends that the complaint only names Pneumo Abex, LLC, rather than either Old Waukesha or New Waukesha. Because Pneumo Abex, LLC, did not obtain rights under the Wausau policies, Wausau contends, it has no duty to defend Pneumo Abex. Again, we disagree.

¶40 When an insurance policy creates a duty to defend an insured, that duty is broader than the insurer's obligation to indemnify the insured. *Fireman's Fund Ins. Co. v. Bradley Corp.*, 2003 WI 33, ¶20, 261 Wis. 2d 4, 660 N.W.2d 666. The duty to defend hinges on the nature, not the merits, of the plaintiff's claim. *Wausau Tile, Inc. v. County Concrete Corp.*, 226 Wis. 2d 235, 266, 593 N.W.2d 445 (1999). We determine whether an insurance company has a duty to defend by comparing the allegations in the plaintiff's complaint to the terms of the insurance policy. *See Fireman's Fund*, 261 Wis. 2d 4, ¶19. An insurer has a duty to defend its insured if the allegations contained within the four corners of the complaint would, if proved, result in a covered loss. *Id.* We "must liberally construe the allegations contained in the underlying complaint, assume all reasonable inferences from the allegations made in the complaint, and resolve any ambiguity in the policy terms in favor of the insured." *Water Well Sols. Serv. Grp., Inc. v. Consolidated Ins. Co.*, 2016 WI 54, ¶15, 369 Wis. 2d 607, 881 N.W.2d 285. "If the policy,

considered in its entirety, provides coverage for at least one of the claims in the underlying suit, the insurer has a duty to defend its insured on all the claims alleged in the entire suit." *Id.*, ¶16.[7]

¶41    We start with the "four corners of the complaint and compare it to the policy to see if there is any potential for coverage—any such potential would trigger the duty and end further inquiry." *5 Walworth, LLC v. Engerman Contracting, Inc.*, 2021 WI App 51, ¶22, 399 Wis. 2d 240, 963 N.W.2d 779.  We look to determine whether the policy, in its entirety, provides coverage for *at least one claim* in the underlying suit. *See **Water Well Sols.***, 369 Wis. 2d 607, ¶16.  This is different from a coverage analysis, where "the parties are not necessarily bound by the four corners of the complaint in determining whether there is coverage." *5 Walworth*, 399 Wis. 2d 240, ¶22.  The parties can "introduce evidence showing the true facts (as opposed to those alleged in the complaint), and we can review such evidence in determining whether coverage exists, or at least may exist, if the evidence results in liability against the insured following a trial on the merits of the underlying claims." *Id.*

¶42    In looking at Huff's complaint to determine whether *any* potential for coverage exists, it is clear from the entirety of the complaint that Huff alleged facts connecting his injury to asbestos exposure incurred during the Wausau policy periods.  Huff, a mesothelioma claimant, alleged that he was exposed to asbestos in the 1950s through the 1980s in various capacities.  One of the named defendants

---

[7] If an insurer refuses to defend, and the claim succeeds and is later determined to be covered by the policy, the insurer must not only indemnify the insured and pay the resulting judgment, but is liable as well for the insured's legal expenses, as well as "any additional costs that the insured can show naturally resulted from the breach." *Maxwell v. Hartford Union High Sch. Dist.*, 2012 WI 58, ¶54, 341 Wis. 2d 238, 814 N.W.2d 484.  Thus, an insurer often brings a declaratory judgment action to determine its duty to defend. *See **Liebovich v. Minnesota Ins. Co.***, 2008 WI 75, ¶55, 310 Wis. 2d 751, 751 N.W.2d 764.

was Pneumo-Abex, LLC, as successor in interest to Abex. Wausau admitted to Pepsi in pre-suit correspondence that it issued policies to Old Waukesha and New Waukesha, from 1963 to 1971, which covers time periods named in the complaint. Wausau further admitted that New Waukesha effectively became Abex. Wausau argues that by requiring it to defend this lawsuit, it will be required to defend claims related to asbestos-containing pump products that were not manufactured by Old Waukesha or New Waukesha, thus posing an increased liability risk. In addition, Wausau objected to increased liability based on an allegation in the complaint that Pneumo Abex, LLC, was part of a conspiracy. These concerns about potential issues for which Wausau may or may not be required to indemnify are inappropriate considerations at this point. When Wausau makes coverage determinations it can evaluate each individual claim and determine what the policy does and does not cover. However, when evaluating its duty to defend, it is clear that the allegations in the Huff complaint are sufficient.

¶43 Wausau also contends that the Huff complaint "fails to implicate any liability of Old or New Waukesha" because it "[m]erely name[s] 'Pneumo Abex' as successor to 'Abex'" without pointing to any actual liability. We have already established that Abex was the direct successor of rights under the Old Waukesha and New Waukesha insurance policies. Old Waukesha and New Waukesha were the manufacturers of the pump products implicated in the complaint. Wausau points to no Wisconsin authority requiring a plaintiff to name with specificity the entire chain of corporate succession leading to a named defendant's responsibility.[8] In his

---

[8] The only authority that Wausau cites for the proposition that the complaint must specifically name the successor to the product is a federal case interpreting Minnesota law. *Continental Ins. Co. v. Daikin Applied Americas Inc.*, 998 F.3d 356, 360–61 (8th Cir. 2021). We disagree with Wausau's interpretation of the case, and find that it actually supports Pepsi's position. However, we do not rely on it.

complaint, Huff named numerous defendants and various sources of injury. Our task is to search the complaint for any possibility of coverage, not to exclude coverage for a covered company when other companies are named who are not insured. "An insurer's duty to defend is broader than its duty to indemnify because the duty to defend exists when it is merely arguable that the policy in question provides coverage." ***Red Arrow***, 233 Wis. 2d 114, ¶17.

¶44 Because Wausau knew that the product was manufactured by Old or New Waukesha, which merged into Abex, then into Pneumo Abex, LLC, it should come as no surprise that it has a duty to defend the lawsuit which involves products made by a company that it insured at the time the products were manufactured.

## CONCLUSION

¶45 In conclusion, based on the reasoning above, we hold that: (1) the anti-assignment clause in the Wausau policies did not prohibit the post-loss assignment of insurance rights from the Waukesha companies through to Pneumo Abex, LLC; (2) the chain of transfer of insurance rights, specifically the duty to defend, was unbroken from Old Waukesha to New Waukesha and Abex to PA Holdings; and (3) the Huff complaint is sufficient to invoke Wausau's duty to defend. Accordingly, we reverse the circuit court's decision granting Wausau's cross-motion for summary judgment and denying Pepsi's motion for partial summary judgment. On remand, the circuit court should grant Pepsi's motion for summary judgment on the Declaratory Judgment-Duty to Defend claim and conduct further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded with directions.

No.    2021AP635(D)

¶46    GROGAN, J. (*dissenting*).    The majority reverses the circuit court's duty-to-defend determination by disregarding the only duty-to-defend Wisconsin case discussing an insurance policy's consent-before-assignment clause *in the context of a third-party claim.*[1]    Instead of applying that case, ***Red Arrow Products Co., Inc. v. Employers Insurance of Wausau***, 2000 WI App 36, 233 Wis. 2d 114, 607 N.W.2d 294, which is binding on us and dispositive, the majority rests its reversal on three first-party insurance claim cases that did *not* involve an insurer's duty to defend, a California decision based on a California statute, and nonbinding secondary authorities.    Because this anti-assignment clause dispute arises in the context of a third-party claim rather than a first-party claim, this court is bound by ***Red Arrow***—unless or until our supreme court changes it—and I would therefore affirm the circuit court.    I respectfully dissent.

¶47    The circuit court held that Employers Insurance Company of Wausau (Wausau) had no duty to defend Pepsi-Cola Metropolitan Bottling Company, Inc. (Pepsi) because Wausau's policies contained a consent-before-assignment clause requiring Wausau's consent before the insureds—Old Waukesha and New Waukesha—could assign the rights and obligations under the policies to another entity.    It did so based on ***Red Arrow***, in which this court held insurance policies did not transfer by operation of law when Old Red Arrow (the insured) sold "certain of its assets and liabilities to New Red Arrow." ***Id.***, ¶¶3, 20-21.    Although the sale gave New Red Arrow assets, it "did not include the [insurance] policies." ***Id.***, ¶20.

_____

[1]  This clause is often referred to as the "anti-assignment clause."

This court also decided that even if Old Red Arrow had assigned rights under the insurance policy to New Red Arrow, New Red Arrow was not entitled to any rights or benefits under the policy because the policy had a consent-before-assignment clause requiring the insurer's consent before New Red Arrow would obtain benefits under the policy. *Id.*, ¶21.

¶48 The majority refuses to apply *Red Arrow*, concluding that: (1) this court's statement in ¶21 is not binding precedent; (2) *Red Arrow* is distinguishable from the instant case; and (3) *Red Arrow*'s enforcement of the anti-assignment clause in a duty-to-defend case is wrong because of a case *Red Arrow* itself relied on. It maintains that three non-duty-to-defend, first-party claim cases—*Dogge v. Northwestern National Insurance Co.*, 49 Wis. 501, 5 N.W. 889 (1880), *Alkan v. New Hampshire Insurance Co.*, 53 Wis. 136, 10 N.W. 91 (1881), and *Max L. Bloom Co. v. United States Casualty Co.*, 191 Wis. 524, 210 N.W. 689 (1926)— together with a California case, *Fluor Corp. v. Superior Court*, 354 P.3d 302 (Cal. 2015), and other secondary authorities render Wausau's consent-before-assignment clause unenforceable. I disagree.

¶49 First, this court is not free to disregard *Red Arrow*'s alternative conclusion in ¶21 because the statement was germane and essential to the decision and not dicta. *See State v. Sanders*, 2007 WI App 174, ¶40, 304 Wis. 2d 159, 737 N.W.2d 44 (Brown, J., concurring) ("[C]ourts can and often do give alternative reasons for their decisions. Alternative rationales are not dicta."); *see also Tagatz v. Township of Crystal Lake*, 2001 WI App 80, ¶8, 243 Wis. 2d 108, 626 N.W.2d 23 ("Where a court's statement is germane to the controversy though not necessarily decisive of the primary issue, it is not dictum."). It was germane and essential to our decision because before addressing the "by operation of law" question, it was necessary to first determine that there had been no assignment.

2

¶50     Second, ***Red Arrow*** is the *only* Wisconsin case addressing the duty-to-defend issue in a similar factual circumstance to the one before us. The trio of first-party claim Wisconsin cases the majority relies on—***Dogge***, ***Alkan***, and ***Max L. Bloom Co.***—involved significantly different facts and a distinct legal issue. All three were first-party property insurance claims, not third-party claims involving a duty-to-defend dispute. Those first-party property insurance claims involved only the payment of a fixed sum under the policy's indemnity provision, which did not increase the insured's liability. None addressed the validity of a consent-before-assignment clause with respect to the duty to defend against a third-party claim. Further, in discussing pre-loss and post-loss assignments, this trio of cases involved a post-loss assignment that involved property damage where the "'liability actually attache[d] under the policy'" before the insured changed. *See* ***Dogge***, 49 Wis. at 503 (citation omitted); ***Alkan***, 53 Wis. at 145 ("after the liability of the insurer has become absolute"); ***Max L. Bloom Co.***, 191 Wis. at 535-536 (quoting ***Dogge*** and ***Alkan***). The term "post-loss" in a first-party claim may not mean the same thing in a third-party duty-to-defend claim arising five decades after the alleged "loss" occurred, a critical point which the majority relegates to a footnote. *See* Majority, ¶19 n.4.

¶51 The present case, like **Red Arrow**, involves more than a fixed sum—it involves the duty to defend.[2] Unlike in **Dogge**, **Alkan**, and **Max L. Bloom Co.**, Wausau's liability was not absolute when Old Waukesha sold its assets to New Waukesha or when every subsequent transfer/sale/merger/acquisition occurred. Unlike a first-party property loss under the indemnity obligation, in a third-party claim, the duty-to-defend obligation under an insurance policy is triggered when a complaint is filed against an insured, and the complaint makes allegations where the insurer "'*could be* held bound to indemnify the insured[.]'" *See **Water Well Sols. Serv. Grp., Inc. v. Consolidated Ins. Co.***, 2016 WI 54, ¶17, 369 Wis. 2d 607, 881 N.W.2d 285 (citation omitted). The duty to defend is broader than the duty to indemnify. *Id.* Unlike indemnity, which is *absolute* at the moment of the loss in a first-party claim, the duty to defend depends on what a third party sets forth in his complaint and the terms of the individual insurance policy, including its exclusions. *See **id.***, ¶¶14-17.

¶52 Third, the majority errs in dismissing **Red Arrow** by criticizing its reliance on **Loewenhagen v. Integrity Mutual Insurance Co.**, 164 Wis. 2d 82, 473 N.W.2d 574 (Ct. App. 1991). In doing so, the majority opinion essentially argues that we are not bound by any published court of appeals case *we* believe was

---

[2] In its Response brief, Wausau says the Huff complaint at issue here involved a settlement for only duty-to-defend costs, not indemnity: "It is undisputed that the *Figueroa* suit was the only 'Asbestos Suit' resulting in a paid settlement or judgment; the remainder involve defense costs only." Is this litigation simply about defense costs for Huff? If yes, that further emphasizes the first-party versus third-party distinction. Both parties' briefs contained information that raised questions where I would have found oral argument to be beneficial to the court's analysis of the complex issues involved here. In fact, Pepsi specifically requested oral argument, stating it "believes that oral argument is warranted to 'fully develop the theories and legal authorities on each side'" and that it "requests publication of the decision in this case to clarify whether [**Red Arrow**] actually prohibits 'post-loss' assignments of insurance recovery rights under third-party liability insurance policies as the Circuit Court held in granting the motion for summary judgment filed by Employers Insurance Company of Wausau[.]" Wausau agreed that "oral argument may assist this Court due to the complexity of the corporate history and the summary judgment record." This appeal, however, was decided on briefs without oral argument.

wrongly decided. That is not how it works. We do not get to decide whether ***Red Arrow*** was rightly or wrongly decided. We are bound by ***Red Arrow*** unless or until our supreme court decides otherwise. *See **Cook v. Cook***, 208 Wis. 2d 166, 189-90, 560 N.W.2d 246 (1997) ("[O]nly the supreme court, the highest court in the state, has the power to overrule, modify or withdraw language from a published opinion of the court of appeals."). If the majority believes ***Red Arrow*** was wrongly decided, it has two choices: (1) it could certify this case to the supreme court; or (2) it could decide this case by "adhering to [***Red Arrow***] but stating its belief that [***Red Arrow***] was wrongly decided." *See **Cook***, 208 Wis. 2d at 190. Contrary to what the majority opinion suggests, ***Red Arrow*** does not "implicitly overrule[] a century of Wisconsin law." Majority, ¶26. The "century of Wisconsin law"—the trio of cases from 1880, 1881, and 1926—decided a different legal issue on different facts than ***Red Arrow***.

¶53 I agree with the majority that Wisconsin law is clear with respect to the enforcement of anti-assignment clauses in first-party property damage cases. ***Dogge***, ***Alkan***, and ***Max L. Bloom Co.*** clearly establish that consent-before-assignment clauses cannot be enforced when an insured assigned the policy rights to another *after* a property loss took place. The Wisconsin Supreme Court, however, has not yet spoken about whether the same is true for a consent-before-assignment clause in *third-party duty-to-defend cases*.

¶54 But, this court has. In ***Red Arrow***, a similar case to the instant case, this court said the consent-before-assignment clause *is* enforceable in a third-party duty-to-defend case. The holding sentence in the first paragraph of ***Red Arrow*** specifically says: "We conclude that because New Red Arrow was not a named insured and *was never assigned the policies*, it does not have coverage under the policies as a matter of contract law." 233 Wis. 2d 114, ¶1 (emphasis added). ***Red***

5

*Arrow* focused on the issue of "whether New Red Arrow is an insured under the policies." *Id.*, ¶15. Because New Red Arrow was not a *named* insured, this court first looked at whether Old Red Arrow assigned the policies to New Red Arrow. *Id.*, ¶20. This court concluded there was no assignment based on the absence of the policies in the sale agreement and the policies' provision requiring the insurer's consent before assignment, which had not occurred. *Id.*, ¶¶20-21. Based on that, this court then addressed the question of whether the policies were transferred by operation of law and decided that the insurer in *Red Arrow* did not have a duty to defend—both because the rights under the insurance policy did not transfer by operation of law and because of the consent-before-assignment clause in the policy. *Id.*, ¶¶20-21, 35. Again, we are bound to apply *Red Arrow* unless or until our supreme court says otherwise. *See Cook*, 208 Wis. 2d at 189-90.

¶55 The majority also erroneously relies on *Fluor* (although it insists that it does not). *Fluor* should not be applied here at all and cannot trump *Red Arrow*. *Fluor* is a California decision based on a California statute that says: "An agreement not to transfer the claim of the insured against the insurer after a loss has happened, is void if made before the loss except as otherwise provided in Article 2 of Chapter 1 of Part 2 of Division 2 of this code." CAL. INS. CODE § 520 (West 2022); *see also Fluor*, 354 P.3d at 303, 316. Wisconsin does not have a similar statute.[3]

¶56 In Wisconsin, we apply the plain text of a contract under our laws—not California's. *See Midwest Neurosciences Assocs., LLC v. Great Lakes*

---

[3] If the majority felt confident that the trio of century-old, first-party cases controlled the issue here, it would not need to turn to a foreign case and secondary, nonbinding sources to bolster its position. By injecting—and indeed largely relying on—these nonbinding, foreign, and secondary authorities, the majority opinion evokes the well-known Shakespearean maxim of "protesting too much" in its refusal to simply apply *Red Arrow* as binding authority. *See* WILLIAM SHAKESPEARE, HAMLET act 3, sc. 2 ("The lady doth protest too much, methinks."). Methinks.

6

*Neurosurgical Assocs.*, *LLC*, 2018 WI 112, ¶39, 384 Wis. 2d 669, 920 N.W.2d 767 (Public policy of liberty of contract requires courts to hold contracts "'sacred'" by enforcing them rather than "'set[ting] them aside.'" (citations omitted)). Some jurisdictions agree with California's *Fluor* rule, and some disagree, and what side of the line those jurisdictions have fallen on has been dependent upon the facts and circumstances specific to each case and the laws of the jurisdiction. *See* Joseph Thacker, Andrew Miller, Stephen Brown & Seymour Nayer, *Transfer of Insurance Rights Under Liability Policies as the Result of the Sale of a Business (Revisited)*, 52 TORT TRIAL & INS. PRAC. L.J. 103, 111-12 (Fall 2016) (collecting cases).

¶57    It is this court's job to follow existing Wisconsin law in deciding cases. This is what the circuit court did, and I would do so as well. The controlling and dispositive law in deciding whether Wausau breached its duty to defend is *Red Arrow*, and under *Red Arrow*, the circuit court's determination that Wausau did not have a duty to defend Pepsi was correct. I would affirm and therefore respectfully dissent.[4]

---

[4] The circuit court, based on the language in the 1968 "Agreement and Plan of Reorganization" requiring Old Waukesha to "convey, transfer, assign and deliver" its property and assets to New Waukesha, also found that Pepsi failed to establish that the rights under Wausau's policies were actually assigned under the 1968 Reorganization Plan. Likewise, the circuit court found that insurance rights were not assigned during the 1990 Stock Purchase Agreement between Abex and PA Holdings. If the rights under the policies were not properly assigned in either of these transactions, this is another basis to conclude Wausau did not have a duty to defend in this matter.

The circuit court did not need to examine the Huff complaint against Wausau's policy provisions because it applied *Red Arrow* and found breaks in the transfer chain so that even if the anti-assignment clause was unenforceable, the Wausau policies did not transfer to the current successor. Because the majority opinion reverses the circuit court, it purports to examine the Huff complaint compared to the Wausau insurance policies. But, when this court examines the four corners of a complaint to determine whether an insurer breached its duty to defend, it should carefully and meticulously review the actual allegations in the complaint and the terms of the insurance policy. The majority opinion's review falls far short and provides virtually no analysis of the Huff complaint at all.